1829.

Champlin
v.
Baldwin.

---

[*562]            *CHAMPLIN v. BALDWIN AND OTHERS.

Under the statute of distributions, brothers and sisters of the half blood are entitled equally with those of the whole blood to a share in the personal estate of the intestate, without regard to the ancestor from whom it was derived.

And if such personal property had been invested in land by the intestate, the land would have descended in the same manner

August 4th.

JOHN HATHORN died in 1824, leaving five children: Jane the complainant, and Mrs. Gustin by his first wife, and Mary Fergus Anthony and Robert Bruce, by his second wife, who is now Mrs. Baldwin. After the death of his first wife he purchased six lots in the city of New York, and took a deed therefor in his own name. Five of these lots were purchased for his two infant daughters, and were paid for with moneys which belonged to their mother, and which came from the estate of her father. Mrs. Gustin died in 1827, intestate and without issue. The complainant filed her bill in this cause for partition; and a reference was made to a master to ascertain the rights of the several parties in the premises, and particularly of the three children of Hathorn by his second wife; they being infants, and having put in an answer by their guardian. The master reported, that in his opinion the complainant was entitled to the whole of the five lots and to one-fourth of the sixth lot, subject to the dower right of Mrs. Baldwin in that lot. The cause was submitted on the pleadings and report, and the testimony taken before the master.

*P. De Witt* for the complainant.

*P. W. Radcliffe* for the defendants.

1829.

THE CHANCELLOR:—There can be but little dispute as to the facts in this case; but the master has mistaken the law as to the rights of the infants in the five lots. He has considered them as having come to the complainant and Mrs. Gustin, from their mother, and has therefore excluded the *brothers and sisters of the half blood of Mrs. Gustin from the whole of her share. It does not distinctly appear whether the money which came from the estate of Brooks, legally belonged to the children of the first wife; or whether it belonged to their father and was appropriated for their benefit because it came by the way of their mother. But for the decision of this question I shall consider it as legally belonging to them, which is certainly the most favorable view of the case for the complainant. In that case if Mrs. Gustin had died after her father, this money, by the statute of distributions, would have gone to all her brothers and sisters equally, without regard to the source from which it was derived. If she had purchased lands with it, those lands would have descended in the same manner; and the result must be the same when the money is vested in lands, by her father, for her use. In the fourth case specified in the statute of descents, (1 Rev. Laws, 53,)[1] it is provided that brothers and sisters of the half blood shall inherit equally with those of the whole blood. The only exception to this rule is where the inheritance came to the intestate by descent, devise or gift of some one of his or her ancestors. The land in this case did not come to Mrs. Gustin by descent, devise or gift from her mother. If the money came from her mother by gift, the donee had the right to lay it out as she pleased; and if she vested it in land it must descend in the same manner as if the money had been earned by her own exertions. It is to be considered in all respects as a new purchase by her.

[*563]

[1] See 2 R. S. (4th ed.) 159, sec. 15.

There must be a decree declaring the rights of the parties accordingly; and as the property cannot be divided, it must be sold; and if Mrs. Baldwin has paid any thing out of her own funds for taxes and assessments, it must be refunded out of the purchase-money. I see no reason for taking an account of what was paid by Hathorn in his lifetime. If his heirs generally are entitled to one lot, and his two eldest daughters' portion of the money was $804, as stated in the account, it is nearly right as it now is; and the expense of taking the account would be greater than any benefit which either of the parties would obtain thereby.

[*564]        *The costs of the respective parties must be paid out of the fund; and the share of the infants must be brought into court, and invested for their use.