The opinion of the Court was delivered by
Rogers, J.,
who after stating the facts and the principal clauses in the wills of George Craig and Archibald Cummings Craig, proceeded thus—
It is contended, 1st, that by the will of. George Craig, the house and lot devised to Doctor Currie, which is the subject of the ejectment, was converted into personal property.
2. That whether personal or real, Doctor Currie took an absolute interest in the estate.
3. That if the real estate was, by the will of George Craig, converted into personalty, yet, Archibald Cummings Craig elected to take it as real estate after he attained full age: that as such, it was a new acquisition in his hands, and descended to the heirs, ex parte paterna as well as materna.
*262 Under the three questions as above stated, it is believed, that all the points which have been so ably and elaborately discussed at the bar, may be considered.
There are certain principles which enter into the solution of the first proposition, that do not, at this day, admit of dispute. Thus equity considers lands directed in wills or other instruments to be sold and converted into money, as money; and money directed to be employed in the purchase of land, as land. The doctrine of conversion, as it is called, is founded on the equity maxim, that what is properly and sufficiently directed to be done, is in equity, considered as done. By virtue of it, one may impress upon his money the character of land, and upon his land, that of money, in so effectual a manner, that the property will thereafter, in a Court of Chancery, be treated as of the description into which it is directed to be changed. The question of conversion is determined according to the intention of the testator, which if it be not expressly mentioned, must of course be derived from the general effect of the will.
The general intention of George Craig to convert his real estate into money is, we think, very plain. If we are at liberty to speculate as to the reasons which governed him in the disposition of his property, it would seem to have arisen from an impression that money would be better for his son than land, an impression probably derived from the difficulty and losses he had experienced in the management of his real estate. The testator has blended his real and personal property into one common fund, and has throughout spoken of it and treated it as money, and as such, has directed it, in express terms, to be paid over to his son, when he arrived at the age of twenty-one years.
It is said, that if the purposes of the will be specific, as to pay the testator’s debts, legacies, or other charges, the property beyond what is sufficient to satisfy the same, will be held to remain in its original estate; and if they should wholly or partially fail, the property will be regarded, as if no conversion or only a partial conversion thereof had been made. The heir-at-law has a resulting trust in such land, so far as it is of value, after the debts and legacies are paid; and he may come into a Court of Equity,' and restrain the trustee from selling more than is necessary to pay the debts and legacies; or he may offer to pay them himself, and pray to have a conveyance of the part of the land not sold in the first case, and the whole in the latter, which property will, in either case, be land and not money. This is undoubtedly true, but the counsel have failed in pointing out such specific purposes in the will. The payment of debts and legacies was not the moving cause, for they might have been paid out of the personal estate, which is the primary fund for that purpose; nor is there any grounds to believe, that the object he designed to effect, was to devise a mode of providing for his alien *263 relatives, who resided in Scotland, as this might have been ’done equally well in other ways. But, even if these were some of the reasons which influenced him, there is no ground for supposing, that they were the only, or the principal ones. By the will he gives his property to his son, when he attains the age of twenty-one years, and directs the money arising from the sale of the real estate, as well as the personal, to be paid over to the guardians for his benefit during his minority, and the money, when he attains age, to be paid to himself by his guardians. Even, in the case of resulting trusts for the benefit of the heir-at-law, it is settled, that if the intent of the testator appears to have been to stamp upon the proceeds of the land directed to be sold, the quality of personalty, not only to sub-serve the particular purposes of the will, but to all intents, the claim of the heir-at-law to a resulting trust is defeated and the estate is to be considered to be personal. Craig v. Leslie, (3 Wheat. 583.) Yates v. Compton, (2 P. Wills. 308).
This case comes within another principle. Where the property devised is real, and directed to be divided for the general purposes of the will, as for instance, to form with the personalty a common fund, for all the purposes of the will, although it should happen, that some of them fail, it will be considered an absolute conversion. The new character is definitively and imperatively fixed upon the property, or in more technical words, it is said to be converted out and out.
But, whether the property be personal or real, it is said Doctor Currie took the whole interest. It this be true, it defeats the plaintiff’s title. The observations which have been already made, might seem to dispense with any opinion on the construction of the will, on the supposition, that the house and lot was real property, but,. although this may be so, yet on that point we think it right to express an opinion. This point arises on the clause of the will of Archibald Cummings Craig:
“ Further, I wish to give unto Doctor Wilm. Curry, of the Citty of Philada. one other three story house in Arch-Stt., No 65.”
It is contended that there are no words of limitation in this clause, which will carry a fee; still it is said, that such intention may be collected from the whole will.
In aid of this part of the case the counsel wish the Court to supply certain words in the introductory part of the will, and in the devising clause. Words may be transposed, supplied, and changed in accordance with the context. But this cannot be done on conjecture; there must be something in the will, from which there may be a reasonable implication, that by the construction you carry into effect the testator’s intent. (Pow. D. 371, in note.) We are requested to supply the words declarative of intention to dispose of all his estate. B.ut, even if we felt ourselves at liberty to do so, *264 I do not see how this would help their case; for although the introduction of a will declaring that a man means to make a disposition of all his worldly estate or worldly goods, is a strong circumstance connected with other words, to explain the testator’s intention of enlarging a particular estate, or of passing a fee, when he has used no words of limitation, it will not do alone. Ferris and Wife v. Smith & al. (17 Johns. Rep. 221.) Loveacres v. Blight, (Cowp. 356.)
We are desired however to add words of limitation to the devising clause, but for this we perceive no warrant in the will. It is impossible for us to tell, if he had carried out his intention further, what disposition he would have made of the fee. He might have limited it in tail, or have given the remainder or reversion to some person, other than the devisee. A witness, Henry Disbrow, says, that he asked deceased as to the further disposition of his estate, to which he replied, that as to the bequests already set down, he had made up his mind upon them, for some time past, but as to further bequests he had not made up his mind, and must take some further time to think upon the subject; upon which the deponent left the room for some time, and upon his return found the deceased, as he thought, incapable of proceeding any further in the business.
It is again said, the word,further, is to be used in connection with' the preceding clause, in which a fee is given to the devisee therein named in apt words. But the defendant cannot derive any benefit from this source, because it is an entirely distinct sentence from the preceding. It needs no reference to it to give it meaning and effect; it is perfectly intelligible, standing by itself; and because the devises are to different persons. The terms, ‘ item,’ ‘ further,’£ moreover,’ are commonly used in the beginning of a new devise or bequest, without indicating any particular intention in the disposition of the property. (4 Rawle, 66.) The cases where this word, or words of similar import have enlai’ged the estate into a fee, are such as in Neide v. Neide, (4 Rawle, 75,) which was this: testator devised as follows, — Principally and first of all, I give and bequeath to my eldest son, J. N. my late purchase from E. C., as also four acres of woodland in a corner, &c. The land purchased from E. C. was purchased in fee simple, and it was held, that a fee passed to the devisee, both in the land purchased from E. C. and in the four acres of woodland. This Court were of opinion that the words my late purchase, indicated an intention to give a fee; that there was a necessary connection between the two pieces of property; that in fact, the latter would be entirely inoperative without reference to the former, and that as it was to the same person, it carried a fee in the four acres of woodland.
Taking then, this to be the case of a sale and conversion of land into money, according to the principles before stated, it follows that it remains so, unless there has been an election to take it as land. Land once impressed with the character of money, must remain so *265 impressed, until some person elects to take it in its original character as land; and this leads to the question, whether the devisee, Archibald Cummings Craig, so elected to consider it. It must be observed, that nothing which took place during the minojjity of Archibald Cummings Craig, can make any difference in the result, for an infant cannot by any act of his, change the property : nor can his guardians; nor is the fact that the property remained unsold until the devisee arrived at full age, entitled to any weight whatever in the decision of this question. It also seems to me to be the better opinion, that taking the estate, and holding it one year after he attained his age, would not of itself be an election, although entitled to some weight. It is certain, that the devisee may take it himself in the shape of land or money ; but when there has been a conversion in the contemplation of the Court, the onus of showing that the property ought to pass under a different denomination, by proving an act in the donee, indicating his intention to that effect, lies on the party who claims it in its original estate. It is therefore incumbent on the defendant, who claims the property as land, to show that Archibald Cummings Craig elected so to consider it; and this the will itself sufficiently shows. It is devised by the testator, as real estate; and I suppose it never entered his mind, when he took possession of the property, to hold it in any other character. And this argument, derives strength from the preceding clause, where the testator devises the other house which he held by the same devise, in the language peculiarly appropriate to the limitation of a fee simple in real estate. It must also be observed, that the testator in his bequests of his personal funds, omits words of inheritance; which would seem to show that however little he may have been benefited by his education, he was aware of the difference in the nature of estates real and personal.
If then, at the death of Archibald C. Craig, the property in dispute is to be treated as real estate, is it to be regarded as a new acquisition by him, or must it be taken as property which descended to him from his father, or was it devised to him as real estate by his father; and did it under the Act of 1794, pass to his heirs, on the part of his mother, as well as to the heirs on the part of his father ?
The plaintiff’s counsel contend, that the power to sell is a naked power, and that until the execution of the power, the land descends to the heir, who at common law, would be entitled to the profits. As a consequence' of this doctrine, it is insisted that the descent is not broken, but that Archibald C. Craig took the legal estate, and that in electing tq take the property as land, he is in by descent, the equitable following the nature of the legal estate. But we do not view the authority as of this description: we think it clear that the authority to the executors is coupled with a trust and an interest. I accede to the principle that a power of sale, does not of itself *266 give the legal estate, a.nd that where a man directs his executors to sell, the land descends until sale to the heir at law; and he may enter and enjoy the rents, issues and profits, for his own use. A devise of land to executors to sell, passes the interest in it, but a devise that executors shall sell the land, or that land shall be sold by the executors, gives them but a power. Whether the descent is broken by a naked power, it is unnecessary to decide, nor since the act of the 31st March, 1792, is the question a point of much importance in Pennsylvania. However it may be as to a naked power, there can be no doubt, that in the case of a power coupled with an interest, as we think'this to be, the descent is broken. In considering the extent of a power, the intention of the parties must be the guide. Sugden on Powers, 459. A reference to the terms of the will, is the only course by which to determine whether a naked power only is intended to be given ; for even if the terms made use of in creating the power, detached from the other parts of the will, confer merely a naked power to sell, yet if the other provisions of the will evince a design that at all events, the lands are to be sold, in order to satisfy the whole intent of the will, it is not a naked power, but is coupled with a trust and an interest. 14 Johns. R. 527, Franklin v. Osgood. 2 P. Wills. 311. Here it is necessary that the land should be sold to satisfy the whole intent of the will, as it is plain that he has directed the whole estate to be turned into personalty, under an impression as we suppose, that was the best disposition of his estate for the benefit of his only son and heir. The testator not only authorizes, but he directs his executors to sell; and by a necessary implication from the will, they are authorized and directed to rent the houses devised, until they shall be sold according to the directions of the will. The character of such a power does not depend upon the quantity of interest given, for a trustee invested only with the use and profits of the land for the benefit of another, has an interest connected with his power; and it has been held, that an authority to 'lease is sufficient to exempt a power from the character of a mere naked authority to a stranger. 2 Johns. Ch. R. 29. This is a devise to the son, who is at the same time the heir of the testator; but supposing that they were not one, what authority would an heir have to enter on the land, and take the profits ? It would defeat the whole intention of the will. The executors must have an interest to carry into effect the general purposes of the testator. It results as a necessary implication from the whole will, that this is not as is contended, a mere naked power to the executors, but that it is an authority, coupled with a trust and interest, and as such that the descent is broken. But did this property in legal contemplation as land, come to the devisee from his father?. We think it did not. It came to him impressed with the character of money. It was by an act of his own that it was reconverted into land. The very act of election implies a choice between the two species of property, and effects *267 a change in the nature of the property itself. If the property had been sold by the executors in pursuance of the directions of the will, and the devisee had become the purchaser, as he might, there can be no doubt that it must be viewed in the light of a new acquisition. Where then can be the difference, when by an act of his own he elects to consider that as land, which otherwise has the impress fixed upon it as money. It is a purchase of it as land, by a sur^ render of the right which he undoubtedly had to consider it as money. And there is no hardship in this to the relations ex parte paterna; for if no election had been made, the property would have gone to his relations in equal degree, without regard to the source from whence the property was derived. And this seems to have been the opinion of the Court in Allison v. Wilson, (13 Serg. & Rawle, 330).
Judgment reversed, and a venire de novo awarded.