## Simpson *against* Kelso.

Land which a testator by his will directs his executors to sell, is to be considered as money; and it is thereby so impressed with the character of money, that it is thereafter to be treated as such: and if the person to whom the money is given, elect to take the land, it shall be considered in him as a new acquisition by an act of his own, and its descent from him be governed by rules accordingly. This construction is given to the act of the 8th of April 1833, as well as to the act of 1794.

ERROR to the common pleas of *Dauphin* county.

Eliza Simpson and others against the administrators of John Joseph Kelso, deceased. This was an amicable action, and case stated in the nature of a special verdict, as follows:

William Kelso, the elder, whom we shall call William the first, had an equitable estate in the lands and premises hereinafter described, subject to the purchase-money due the proprietaries, having purchased the same at sheriff's sale as the property of William Harris. William the first died intestate. The lands referred to were appraised at 1371 pounds, under a proceeding in the orphans' court, subject to the incumbrance before referred to, and were taken by his son William Kelso, whom we shall call William the second, on the 20th of January 1789, he being entitled to two shares as eldest son; for the residue he gave his bond to the other heirs and representatives of his father, which were afterwards paid 21st of May 1790. William Kelso the second paid the incumbrance due the proprietaries and obtained their deed of that date, vesting in him the legal estate in fee simple.

The said William the second was intermarried with Elizabeth Chambers, and had issue William Kelso, whom we shall call William the third, and John Joseph Kelso, and Eleanor. Eleanor died in her minority, unmarried, and without issue. John Joseph Kelso also died without issue. William the third died as hereinafter stated, unmarried, and without issue. William Kelso the second, the father of John Joseph Kelso, had brothers and sisters, viz: Sally, who was married to Nathaniel Simpson, both of whom died leaving children, Eliza and George; Patty, who was intermarried with John W. Godfrey, they both died leaving no issue; Thomas Kelso, who died in 1791, unmarried, and without issue; John Kelso, who left several children, who are considered as plaintiffs; Jane, who was intermarried with John Brown, and left issue William John Brown; and Joseph Kelso, who left children Charles Kelso and Mary Cruise; and these are all the brothers and sisters of the said William the second

and their heirs. Elizabeth Chambers, intermarried, as before stated, with the said William Kelso the second, deceased, left surviving heirs John Chambers her brother, and her sisters Mary M'Kinney, Jane Chambers, and Margaret Chambers, who are still in full life. John Joseph Kelso, son of William the second, late of the borough of Harrisburg, in the county of Dauphin, died on the 5th day of September A D. 1837, intestate, and without issue, and seised and possessed of a tract and parcel of land situate in the township of East Pennsborough, in the county of Cumberland, containing twenty-one acres two roods and twenty-seven perches on the 1st day of September A. D. 1837. Administration of the estate of the said deceased was granted by the register of the county of Dauphin to Sarah D. Kelso and Mary M'Kinney, at an orphans' court for the county of Dauphin, on the 10th day of November 1837. Upon the petition of the said administratrixes the said court made a decree authorising the said administratrixes to raise, by the sale or mortgage of the real estate of the said deceased, situate in the county of Cumberland aforesaid, the sum of 4000 dollars for the payment of the debts of the said deceased. On the 12th day of December A. D. 1837, the orphans' court for the county of Cumberland, on the petition of the said administratrixes, made an order and decree authorising the said administratrixes to sell the said tract and parcel of land for the purpose of raising the sum of 4000 dollars for the payment of the debts of the said deceased. On the 4th day of January A. D. 1838, in pursuance of the said order of the orphans' court of Cumberland county, the said administratrixes sold the said tract and parcel of land to Robert R. Church for the sum of 12,860 dollars; one of the conditions of the said sale being agreeably to the order of the court aforesaid, that "the one-half of the purchase-money of all the real estate which may be sold above the sum of 4000 dollars, is to be reserved in the land by mortgage thereon to be given by the purchaser to the said administratrixes, the interest of which one-half is to be paid to the widow of the said decedent during her life, and at her death the principal thereof to be paid to the heirs of the said decedent;" which sale on the return thereof made by the said administratrixes to the said orphans' court of Cumberland county was by the said court duly confirmed, agreeably to the conditions of the said sale. On the 2d day of April A. D. 1838, the sum of 4430 dollars was secured by mortgage from the said Robert R. Church, on the said land to the said administratrixes, to be paid as mentioned in the said order of court, and the balance of the purchase-money aforesaid was paid to the said administratrixes, of which there remains in their hands the sum of 4215 dollars, the surplus above the sum of 4000 dollars required for the payment of debts as aforesaid.

William Kelso the second, late of East Pennsborough township, in the county of Cumberland, died on the 7th day of June A. D. 1807, seised in fee simple of a messuage and tract of land situate

[Simpson v. Kelso.]

in the said township, called Kelso ferry place, containing 200 acres, as before stated, with the right of a ferry on the Susquehannah river thereto appurtenant, of which the parcel of land sold as aforesaid, by the administratrixes aforesaid, was a part; the said William Kelso the second having made his last will and testament in writing, dated the 7th day of April A. D. 1807, on the 10th day of June A. D. 1807, the said will was duly proven before the register, &c of the county of Cumberland aforesaid, and letters testamentary thereon duly issued to Robert Harris and Elizabeth Kelso, appointed by the said will executor and executrix thereof, who took upon them the administration of the same, *pro ut* the certified copy of the said will hereto annexed, and made part of this case. The said William Kelso the second, at his death, left his widow, the said Elizabeth Kelso, and issue his sons William Kelso the third, and the said John Joseph Kelso, and his daughter Elizabeth. The said Elizabeth Kelso died on the 30th of May A. D. 1808, unmarried, and without other issue than her children above mentioned. The said Robert Harris, executor, and Elizabeth Kelso executrix aforesaid, until the time of the death of the said Elizabeth Kelso, and the said Robert Harris, as surviving executor aforesaid, after her death, had and exercised the entire charge and management of all the real estate of the said William Kelso the second, deceased, including the messuage and tract of land in East Pennsborough township aforesaid, in their name leasing and renting the same from time to time, and the same being occupied and possessed by the persons to whom the same was so leased, causing the repairs thereon to be done, paying the taxes thereon, and receiving the rents, issues, and profits thereof, from the time of the death of the said William Kelso the second, deceased, until the said John Joseph Kelso arrived at age, which was on the 19th day of September A. D. 1820. On the 20th day of October A. D. 1807, the said Robert Harris, surviving executor of William Kelso the second, deceased, by virtue and in pursuance of the direction of the said will, sold the whole of the parcel of land mentioned in the said will, as that which he (the said testator) purchased of Thomas Fisher. The said Eleanor Kelso died on the 3d day of March A. D. 1816, intestate, unmarried, and without issue. The said William Kelso, the younger, arrived at age on the 5th day of October A. D. 1814. In the year 1820, the said William Kelso the third, and John Joseph Kelso, with the consent and agreement of the said Robert Harris, surviving executor of the said William Kelso the second, deceased, took and entered into the actual possession and occupancy of the whole messuage and tract of land aforesaid, of which the said William Kelso the second died seised, (except 20 acres thereof, sold as aforesaid by Robert Harris, surviving executor aforesaid,) in their own right and as their own estate, and so continued to occupy and possess the same, until the death of the said William Kelso the third, which was on the 14th

VIII.—W

day of July A. D. 1827, during all which time the said William Kelso the third, and the said John Joseph Kelso, possessed, occupied and enjoyed the same in their own right and as their own estate by themselves and their tenants, for part of which time leasing the whole and parcels thereof for terms of years, and for part of the said time residing and dwelling themselves thereon, with their households, possessing and farming the same.

The said William Kelso the third, died as aforesaid, unmarried and without issue, having made his last will and testament in writing, bearing date the 21st day of June 1827, duly proved and recorded in the register's office of Cumberland county, in which he granted and devised all his real estate wherever situate, all his right, title, estate and interest in and to the said messuage and tract of land called Kelso ferry place, to his brother John Joseph Kelso, Jane Chambers and Margaret Chambers, and their heirs forever, share and share alike, equally to be divided between them. At the time of the death of the said William Kelso the third, he and the said John Joseph Kelso were jointly seised and possessed of the said messuage and tract of land.

On the 23d day of November A. D. 1825, Robert Harris, surviving executor of William Kelso the second, deceased, by his deed poll, released, remised, and forever quit claim, for the consideration therein mentioned, to the said John Joseph Kelso, Jane Chambers and Margaret Chambers, all his estate legal and equitable, and all his right, title and interest derived, granted by, under or in virtue of the said last will and testament of William Kelso the second, deceased. On the 10th day of September 1822, the said Robert Harris filed in the register's office of the county of Cumberland, his final administration account, as surviving executor of the said William Kelso the second, deceased, which account was, on the 21st day of December A. D. 1822, duly confirmed by the orphans' court of the said county, as before stated.

On the 21st day of October 1827, Jane Chambers and Margaret Chambers aforesaid, by deed of indenture, for valuable consideration, sold and conveyed all their right, title and interest in and to the said messuage and tract of land, to the said John Joseph Kelso, his heirs and assigns forever.

Said John Joseph Kelso was, and continued in the occupancy and possession of the said messuage and tract of land in the right and estate of himself and Jane Chambers, and Margaret Chambers, from the time of the death of the said William Kelso the third, to the 21st day of October 1827, and from that time last aforesaid, in his own right and estate, until the first day of April A. D. 1828, when he sold and conveyed the same to Valentine Hummel and Michael Lepkicher, in fee simple, except that parcel thereof of which he died seised and possessed as aforesaid, and which was sold by the said administratrixes of his estate, and of which said parcel thereof said John Joseph Kelso continued in the actual possession

and occupancy, by himself and tenants, from the time of the sale and conveyance last aforesaid, until his death.

The parcel of land sold as aforesaid by the administratrixes of the said John Joseph Kelso, deceased, was included in that part of the principal tract aforesaid, described in the last will and testament of William Kelso the second, deceased, as "situate on the north side of the great road leading to Carlisle."

The aforesaid Robert Harris was testamentary guardian of the aforesaid children of William Kelso the second. He settled his guardianship account in Cumberland county, the 11th of September 1822; that of Eleanor Kelso, overpaid by accountant, 1793 dollars; of William Kelso the third, balance in the hands of accountant, 790 dollars 84 cents; of J. J. Kelso, balance in the hands of accountant, 435 dollars 87½ cents.

At the same time he settled the account of his administration as executor, and there was a balance in his hands of 9901 dollars 35 cents.

William C. Chambers became administrator of William Kelso the third, and settled his account the 9th of May 1826, balance in hands 242 dollars 90 cents.

The jury is ignorant of the law arising out of the foregoing facts. If the heirs and representatives on the father's side, in exclusion of the heirs and representatives on the mother's side, are entitled to the whole fund, then we find for the plaintiffs     dollars.

If they are entitled to all except the proportion of the fund arising out of the two-thirds of one-half, or the proportion willed to John Joseph Kelso, Jane Chambers and Margaret Chambers, then we find for plaintiffs     dollars.

If they are entitled to only one-half of the fund, then they find for plaintiffs     dollars.

If the whole, in law, goes to the heirs and representatives on the brother's side, then they find for defendants.

The only part of the will of William Kelso (the second) which is material, is as follows:

"*Item*. It is my will, that my real estate shall thus continue in the hands of my executors until my son William arrives at the age of twenty-one years; at which time (if he should incline to enter into business), I direct that my executors, or the survivor of them, shall sell that part of my plantation situate on the south side of the great road leading to Carlisle, containing about one hundred acres, for the best price that can be gotten for the same; the purchase-money to be divided into four equal shares, one thereof to be paid to my beloved wife, and the other three to my children equally, or the survivor or survivors of them. The residue of my real estate situate on the north side of said road, together with the ferry and its appendages, to remain at lease as aforesaid, until my youngest child arrives at the age of twenty-one years; at which time my executors, or the survivor of them, shall sell the same for the best

price that can be gotten therefor; the purchase-money to be divided into four equal parts, one part thereof to be paid to my wife, and the remaining three parts to be equally divided amongst my children, or the survivor or survivors of them. And I do hereby authorise and empower my executors, or the survivor of them, to make and deliver to the purchaser or purchasers of my real estate, as good and sufficient title in law as I myself might or could do if personally present.

The court below rendered a judgment for the defendant.

*Reed*, for plaintiff in error.
*M'Kinney* and *M'Clure*, for defendant in error.

The opinion of the Court was delivered by

ROGERS, J.—In Burr *v.* Sims, 1 ~~Rawle~~ 252, it was decided, first that land directed by will to be sold and converted into money, is to be considered as a devise of money, and that by the devise, the character of money is so impressed upon it, that it is thereafter to be treated as of that description of property; and, secondly, that an election on the part of the devisee, operated as a new acquisition; that the property, in legal contemplation, did not come from the father to his son as land, but as money; but by an act of his own was reconverted into land. This was a decision on the act of 1794, which is not, in this respect, altered by the ninth section of the act of the 8th of April 1833. The latter act was not intended, as is said, materially to alter the system as contained in former acts, but to consolidate and simplify the provisions, alter the phraseology and order of arrangement, and reduce the law into a smaller compass, so as to save much time and labour of those who wish to examine its details. Whether the legislature have conferred any very great benefit by this change, may admit of doubt; but be this as it may, we do not feel disposed to alter the construction of former acts, from a difference of phraseology merely, or any new order of arrangement, unless the intention to alter the law is very apparent. It is far better to take the law as before understood, rather than yield to nice and fanciful distinctions, arising from trivial differences in the wording of the acts. In the ninth section of the act of the 8th of April 1833, it is provided, that no person who is not of the blood of the ancestors, or other relation from whom any real estate descended, or by whom it was given or devised to the intestate, shall, in any of the cases before mentioned, take any estate of inheritance therein; but such real estate, subject to such life estate as may be in existence by virtue of this act, shall pass to and vest in such other persons as would be entitled by this act, if the persons, not of the blood of such ancestor or other relation, had never existed, or were dead at the decease of the intestate.

The question, therefore, is, did the residue of the testator's real estate, mentioned in the will as situate on the north side of the

[Simpson v. Kelso.]

road, with the ferry, &c., pass to the devisees as money or as land. And it is clear, according to the authority of Burr *v.* Sims, it came to them impressed with the character of money, and that it was afterwards reconverted, by an act of the devisees, into land. According to the case cited, it was a new acquisition or purchase by them, and descended, on the death of the purchaser, to the next of kin, without regard to the persons who were of the blood of the testator. As land, it neither descended, nor was it given or devised to him by the testator. By the devise, the land was immediately converted out and out into money, and as such went into the possession of the devisees. It must be observed that this clause of the will has no connection with a former part of the devise, in which it is said that the real estate shall continue in the hands of the executors until William, another of the sons, arrives at the age of twenty-one; at which time, if he inclines to enter into business, he directs the executors to sell the south side.

Judgment affirmed.