MELINDA S. KIDNEY, Respondent, *v.* LEON A. WAITE and Others, Respondents, Impleaded with GEORGE D. HEWITT and Others, Appellants.

Fourth Department, May 2, 1917.

**Decedent's estate — descent of real property — Decedent Estate Law, section 88, construed — evidence insufficient to establish that real property of which intestate died seized came to her on the part of her father.**

Section 88 of the Decedent Estate Law, providing for the descent of property, is in derogation of the common law and should be strictly construed.

Heirs of a decedent, upon her father's side, in order to establish exclusive title in themselves under said statute, must show, *first*, that the property claimed by them as and when it came to the intestate, was an " inheritance," *i. e.*, real estate as distinguished from personal property, and *second*, that it came to the intestate " on the part of the father " directly either by " devise," " gift," or " descent."

Evidence examined, and *held*, insufficient to establish that the property of the decedent came to the intestate on the part of her father.

FOOTE, J., dissented.

APPEAL by the defendants, George D. Hewitt and others, from so much of an interlocutory judgment of the Supreme Court in favor of the respondents, entered in the office of the clerk of the county of Jefferson on the 24th day of July, 1916, as adjudges that the respondents are the owners in fee of the premises described in the complaint.

The judgment was rendered upon the decision of the court after a trial at the St. Lawrence Special Term and decreed the sale of certain real property in partition.

*W. B. Van Allen,* for the appellants.

*G. S. & H. L. Hooker* [*H. L. Hooker* of counsel], for the plaintiff, respondent.

*P. C. Williams,* for the respondents Waite and others.

MERRELL, J.:

This action is in partition, and the sole question involved upon this appeal is as to whether upon the death of the intestate her real property descended to her paternal heirs to the exclusion of her maternal heirs or whether the maternal heirs were entitled to share therein.

Eliza L. Hosford, the intestate, died at the city of Watertown, N. Y., on the 4th day of August, 1915, leaving John C. Hosford, her husband, her surviving, but died without leaving child or descendant, father, mother, brother or sister. She left, however, her surviving, uncles and aunts and descendants of uncles and aunts, both on the side of her father and of her mother. At the time of her decease she was seized in fee simple of the real estate described in the complaint, consisting of residential property in the city of Watertown, N. Y. The property has been sold herein, and the proceeds are in the hands of the county treasurer of Jefferson county awaiting the determination of this appeal.

The respondents, being the heirs of decedent upon her father's side, assert title thereto by reason of the fact which they claim the evidence establishes, that the real property of which the intestate died seized came to her on the part of her father. The appellants deny that the real property came to the intestate through her father, and, therefore, claim

a share in the proceeds of sale. The evidence was taken before a referee and reported to the court without opinion, and thereon the court at Equity Term made its decision whereby it found and decided that said real estate came to the intestate on the part of her father, and thereon interlocutory judgment was granted decreeing title thereto in respondents as the paternal heirs of said intestate. I do not think the evidence justifies such conclusion. The paternal heirs of the intestate base their claim to the real estate in question to the entire exclusion of those upon her mother's side, by virtue of certain provisions of statute. Section 88 of the Decedent Estate Law (Consol. Laws, chap. 13; Laws of 1909, chap. 18) provides as follows:

" § 88. Brothers and sisters of father and mother and their descendents * * *. If there be no heir entitled to take, under either of the preceding sections, the *inheritance*, if it shall have come to the intestate *on the part of the father*, shall descend:

" 1. To the brothers and sisters of the father of the intestate in equal shares, if *all* be living.

" 2. If any be living, and any shall have died, leaving issue, to such brothers and sisters as shall be living and to the descendants of such as shall have died.

" 3. If all such brothers and sisters shall have died, to their descendants.

" 4. * * * But, if the inheritance shall have come to the intestate on the part of his mother, it shall descend to her brothers and sisters and their descendants; * * *. If the inheritance has not come to the intestate on the part of *either* father or mother, it shall descend to the brothers and sisters both of the father and mother of the intestate, and their descendants in the same manner. In all cases mentioned in this section the inheritance shall descend to the brothers and sisters of the intestate's father or mother, as the case may be, or to their descendants in like manner as if they had been the brothers and sisters of the intestate. * * *."

Section 80 defines the term " inheritance " as used in the Decedent Estate Law, and the effect of the statute relative to such descent. It is provided:

" § 80. Definition and use of terms; effect of article.

" 1. The term ' real property ' as used in this article, includes every estate, interest and right, legal and equitable, in lands, tenements and hereditaments, except such as are determined or extinguished by the death of an intestate, seized or possessed thereof, or in any manner entitled thereto; leases for years, estates for the life of another person; and real property held in trust, not devised by the beneficiary. ' Inheritance ' means real property as herein defined, descended according to the provisions of this article.

" 2. The expressions ' Where the inheritance shall have come to the intestate on the part of the father ' or ' mother,' as the case may be, include every case where the inheritance shall have come to the intestate by devise, gift or descent from the parent referred to, or from any relative of the blood of such parent."

These statutory provisions constitute the only basis for the claim of the respondents to the proceeds of said real estate to the exclusion of the appellants. The statute is in derogation of the common law and requires strict construction. To establish exclusive title in themselves the respondents must show, *first*, that the property claimed by them as and when it came to the intestate was an " inheritance," *i. e.*, real estate as distinguished from personal property, and, *second*, that it came to the intestate " on the part of the father " directly, either by " devise," " gift " or " descent." In other words, the property must have come to the intestate from her father in one of the three ways mentioned. Concededly it could not have come to the intestate by devise, as her father died intestate, and, as her father never had title to the real estate of which she died seized, it could not have come to her by descent, and it is difficult to appreciate how the inheritance could have come to her by gift from her father, when he never had title to it.

It is the contention, nevertheless, of the respondents that the inheritance came to the intestate on the part of her father by gift, and while the trial court has made no express finding of a gift, yet the claim of the respondents seems to be upheld on such theory. Title to the real property in question was prior to August 4, 1868, in one John Prouty, and the same was on said date conveyed by said Prouty and wife to the intestate,

Eliza L. Hosford. It is the claim of the respondents that the consideration for such conveyance was furnished and paid by the father of the intestate, one Perley Blodgett, and that it was by his direction that the deed of conveyance was made to his daughter, Mrs. Hosford, and the learned trial court has found that the evidence establishes such facts, and the conclusion has been reached that the real property of which Mrs. Hosford thus became the grantee was within the terms of the statute mentioned an " inheritance " coming to the intestate on the part of her father, Perley Blodgett, by gift. I am unable to acquiesce in such determination.

Deferring for the present the question whether the facts claimed to have been established are such as show an inheritance coming to the intestate on the part of her father, I am unable to discover any evidence of probative force showing either that the consideration for the conveyance to Mrs. Hosford was paid by her father or that the deed from Prouty to her was pursuant to any direction on the father's part. The learned trial court in its opinion states that the evidence shows that the real property was paid for by the father of the intestate. A careful analysis of the evidence will, I think, refute such claim. In an effort to prove such payment and direction to deed to Mrs. Hosford, the paternal heirs swore but two witnesses, and it is upon their testimony that respondents rely. *First,* the witness John F. Moffett was sworn, and testified to an acquaintance with Perley Blodgett, intestate's father, as early as 1860 or 1861, when the witness was a bank clerk and Blodgett was a customer of the bank. They became friendly and had some business relations and after Blodgett's death the witness was appointed administrator of his estate. Relative to the conveyance of the real property in question to Mrs. Hosford, the witness Moffett, on his direct examination, was interrogated and answered as follows: " Q. Now, Mr. Moffett, do you know by whose direction that deed was made to Mrs. Hosford? * * * A. I think I do. Q. Do you know who paid for the property? * * * A. I think I do. * * * Q. Now, who did furnish the money to pay for this house for which this deed was given? * * * A. Perley Blodgett."

On cross-examination the witness Moffett was asked the

following questions and gave the following answers thereto: " Q. Mr. Moffett, you didn't see this money paid over to Mr. Prouty, did you? A. I can't say that I did. Q. Or in what denomination it was paid over to Mr. Prouty, you don't know? A. No. Q. And when it was paid, you don't know? A. I don't know the exact hour or day. Q. Or date? A. No. Q. Or month? A. I think I know the month. Q. Positively? You were present when the money was paid to Prouty? A. I can't swear that I was. Q. Do you know that you were or were not? Will you say that you were or were not? A. I can't say. Q. You haven't any present recollection of being present? A. No. Q. And who handed the money to Prouty, you don't know? A. No, I can't tell."

The paternal claimants also swore the surviving husband of Eliza L. Hosford and on direct examination he testified as follows: " Q. Who paid for the property? * * * A. Her father."

On cross-examination he testified as follows: " Q. When you say that your wife's father paid for that property you are simply telling us to the best of your judgment? A. Why yes. Q. That is what you think, is it not? A. Yes. Q. Whether your wife's father gave the money to your wife and she paid Prouty or whether it was paid in some other way, you don't know? A. There is no way — Q. You told us that you weren't there when the money was paid over. You have no recollection of being there, that is right, isn't it? A. Yes. Q. You say you have no recollection of being present when the money was paid to Prouty? A. No. Q. So just how it was paid to Prouty, you don't know? A. No."

The foregoing is the entire testimony relied upon to prove the payment by the intestate's father of the consideration for the conveyance to her, and falls far short of establishing such payment or of connecting Blodgett with the transaction. Neither of the witnesses evidenced any actual knowledge of the alleged payment of the purchase price by Blodgett. Whatever impression either witness had appears to be based upon hearsay and to be purely conjectural. Their testimony is devoid of probative force. The burden was upon those claiming the property by virtue of the alleged participation of

intestate's father in the transaction whereby the property was deeded to her, to connect the father. They failed to discharge the burden cast upon them.

But even assuming that the evidence established the fact that Blodgett paid the consideration for the conveyance to his daughter, I am still of the opinion that even upon that assumption the statutory requirements have, not been met. If Blodgett gave his daughter the money to pay for the premises such gift was of personal property and never was an inheritance, nor was it real property. If Blodgett paid Prouty directly and Prouty thereupon deeded to the daughter the real estate came from Prouty and never passed through her father. As defined by the statute the inheritance did not come to the intestate on the part of her father. He never owned such inheritance or the real property which it represented, and hence it could not have come to the intestate on his part. (*Champlin* v. *Baldwin*, 1 Paige, 562; *Adams* v. *Anderson*, 23 Misc. Rep. 705.)

The learned trial court based its decision upon the case of *Dolin* v. *Leonard* (144 Ind. 410). We think that case clearly distinguishable from the case at bar. There intestate's father held a contract for certain real estate. He paid the consideration and was entitled to a deed of the premises. He had taken possession of the property, fenced the same and built his dwelling thereon. Later he caused the deed to be made to his daughter, the consideration being love and affection. The daughter died and the court held that the equitable title was in the father, he having paid the purchase price and been in possession under his contract and having made valuable improvements. Such was not the case here. Blodgett never was in possession and never held the equitable title to the premises. He never had the slightest interest therein. Moreover, the decision in Dolin v. *Leonard* has the support of the Indiana statute,* providing as follows: "An estate which shall have come to the intestate by gift or by conveyance in consideration of love and affection, shall, if the intestate die without children or their descendants, revert to the donor, if living, at the intestate's death."

* See Indiana Revised Statutes (1881), § 2473: Indiana Revised Statutes (1914), § 2997; 2 Burns' Anno. Ind. Stat. (1914) 116, § 2997.— [REP.

No such statute affects the situation before us. We do not regard the Indiana decision as an authority in support of the decision here.

The interlocutory judgment, in so far as it adjudges ownership in fee of the real property in question in the paternal heirs of the intestate should be reversed and in its place judgment should be directed providing for distribution of the proceeds of sale of said real property among both the paternal and the maternal heirs of said intestate, with costs to the appellants.

All concurred, except FOOTE, J., who dissented and voted for affirmance.

Interlocutory judgment, in so far as it adjudges ownership in fee of the real property in question in the paternal heirs of the intestate, reversed upon questions of law and fact, and in its place judgment directed providing for distribution of the proceeds of sale of said real property among both the paternal and the maternal heirs of the intestate, with costs to the appellants. The finding of fact in the decision, numbered 10, is hereby disapproved and stricken out, and conclusions of law amended to conform with this decision.