WILLIAM H. NELSON and Another, Plaintiffs, *v.* GEORGE H. NELSON et al., Defendants.

(Supreme Court, Westchester Special Term, September, 1919.)

Partition — when title of tenant in common is effectually divested by a sale in — when former interest is merged in title conveyed by referee — purchaser at a partition sale has no right to deduct from purchase price the amount of his share in proceeds of sale — Decedent Estate Law, § 88.

The interest of a tenant in common in land as such is effectually divested by a partition sale and neither he nor any one claiming under him, as such tenant, can assert his former tenancy as a basis of title against the purchaser; the former tenancy is merged in the entire title conveyed by the referee's deed and attaches to the proceeds of sale.

The purchaser at a sale in partition, whether a tenant in common or otherwise, takes the entire title including his own share or interest in the property, not by virtue of its descent from his ancestor, but because he is the highest bidder and has paid the price.

Although it is usual to allow the tenant in common who becomes the purchaser at a sale in partition to deduct from the purchase price the amount of his share in the proceeds of sale he has no absolute right to such deduction; he stands in no better nor worse condition by reason of his tenancy than a mere stranger.

The principle that the purchaser at a sale in partition acquires only the interest of all the tenants in common, parties to the suit, applies simply to the extent of the title under the referee's deed, not to the descendible quality arising from its derivation.

Upon the death of one of two brothers, tenants in common of certain real estate, his son and daughter succeeded to his one-half interest in the property, and upon the death of the other brother, intestate and without issue, his interest in the property descended, one-half to his sister and the remainder to the children of his deceased brother, whose son at a sale in partition bid in the property in his own name but the referee's deed

45

was made to him and his sister M., so that they became seized in fee of. the entire property, each owning a one-half interest. Said son died intestate without issue and his interest in the property descended to his sister M., who died intestate the sole owner of the property. M.'s mother had two sisters, one of whom died leaving her surviving one child who also died before M. The other sister of said mother left her surviving four children, one of whom died intestate leaving her surviving a daughter, another died intestate survived by her two children, another died intestate without issue and the last one died intestate survived by her two children. In an action for partition involving a dispute as to the respective shares of the several tenants in common, arising under section 88 of the Decedent Estate Law, *held,* that no part of the land descended to M. from her father and that as none of the brothers and sisters of her father and mother are now living, her cousins on her mother's side were entitled to share in the property.

ACTION for partition.

Ticknor & Ticknor, for plaintiffs.

P. A. Anderson, for defendants Louis Dean and others.

Thomas F. Keogh, for defendant Laura A. Newey.

Geller, Rolston & Horan, for special guardian.

YOUNG, J. This action is brought for the partition of certain real property and involves a dispute as to the respective shares of the several tenants in common.

The property was formerly owned by John B. Sarles and Reuben B. Sarles, his brother, as tenants in common. John B. Sarles married Antoinette or Annette Waters. He died in 1885, seized of a half interest in the property and leaving William Henry and Mary Ella Sarles his children and heirs at law,

who succeeded to his one-half interest in the property. Reuben died in December, 1900, intestate and without issue, and his one-half interest in the property descended one-half to his sister Prudy Nelson, and the remaining half of his interest to William Henry and Mary Ella Sarles.

In 1901 a partition suit was brought, the property was sold thereunder and bid in by William Henry Sarles, but the referee's deed was made to William Henry and Mary Ella Sarles, so that they became seized in fee of the entire property as tenants in common, each owning a one-half interest.

William Henry Sarles died intestate and without issue on February 4, 1919, and his one-half interest in the property thereupon descended to his sister Mary Ella Sarles so that when she died on March 1, 1919, she was seized in fee of the entire property.

Antoinette Waters, the wife of John B. Sarles, the father of Mary Ella, had two sisters, Janie Marshall and Almira Wright. Janie Marshall died leaving one child, Laura Marshall, who also died before Mary Ella Sarles. Almira Wright died leaving four children, Edward Wright, Bell Hoag, Alice Curry and Flora Dean. Edward Wright died intestate leaving a daughter, Laura Newey. Bell Hoag also died intestate leaving two children, Wright Hoag and Flora Hoag. Alice Curry died intestate and without issue, and Flora Dean died intestate leaving two children, Louis Dean and Flora Dean.

The controversy between the parties arises under the provisions of section 88 of the Decedent Estate Law, which, so far as material, provides as follows:

" If there be no heir entitled to take, under either of the preceding sections, the inheritance, if it shall come to the intestate on the part of the father, shall descend:

Supreme Court, September, 1919.          [Vol. 108.

" 1. To the brothers and sisters of the father of the intestate in equal shares, if all be living.

" 2. If any be living, and any shall have died, leaving issue, to such brothers and sisters as shall be living and to the descendants of such as shall have died.

" 3. If all such brothers and sisters shall have died, to their descendants.

" 4. If there be no such brothers or sisters of such father, nor any descendants of such brothers or sisters, to the brothers and sisters of the mother of the intestate, and to the descendants of such as shall have died, or if all have died, to their descendants. But, if the inheritance shall have come to the intestate on the part of his mother, it shall descend to her brothers and sisters and their descendants; and if there be none, to the brothers and sisters of the father and their descendants in the manner aforesaid. If the inheritance has not come to the intestate on the part of either father or mother, it shall descend to the brothers and sisters both of the father and mother of the intestate, and their descendants in the same manner. In all cases mentioned in this section the inheritance shall descend to the brothers and sisters of the intestate's father or mother, as the case may be, or to their descendants in like manner as if they had been the brothers and sisters of the intestate."

The expressions " where the inheritance shall come to the intestate on the part of the father " or " mother," as the case may be, are defined to include every case where the inheritance shall have come to the intestate by devise, gift or descent from the parent referred to or from any relative of the blood of such parent. Decedent Estate Law, § 80. It has also been held that where an intestate dies seized of land which he has inherited from his brother, such land will not

be regarded as having come to the estate on the part
of his father because of the fact that the intestate's
brother inherited the land from his father, as this
section does not require that the estate be traced back
further than the immediate ancestor of the person
last seized. *Hyatt* v. *Pugsley*, 33 Barb. 373.

The plaintiff and the defendants George and Henry
Nelson are descendants of Prudy K. Nelson, a sister
of the father of Mary Ella Sarles. The defendants
Laura Newey, Wright Hoag, Flora Hoag, Louis Dean
and Flora Dean are descendants of Almira Wright,
a sister of the mother of Mary Ella Sarles.

It is contended by plaintiff and the guardian *ad
litem* for the defendants Nelson that a portion of the
property came to the intestate on the part of her
father, and that, therefore, the relatives on the
mother's side are excluded from any share in that
portion. The other parties to the action contend that
by reason of the partition suit the intestate acquired
a one-half interest by purchase and not by descent
from her father, and that the other one-half interest
she acquired by descent from her brother. So that
none of the property came to her on the part of her
father, and that by virtue of the statute above quoted,
the mother's relatives are entitled to share in the
property. As will be seen, therefore, the case turns
upon the question as to the effect of the partition suit.

I do not think the cases cited by plaintiff's counsel
support his contention. The decision in *Hartman's
Estate*, 4 Rawle (Penn.), 39, rested upon the fact that a
distributee purchased the property at an appraised
value pursuant to the provisions of a codicil giving
him the privilege, and he was held to have taken under
the will as a gratuitous devisee. But the law of Pennsylvania seems to be that where a distributee elects to
take the land, and it is not sold as provided by the will,

he takes a new acquisition. *Simpson* v. *Kelso*, 8 Watts, 247; *Burr* v. *Sim*, 1 Whart. 252.

*Brower* v. *Hunt*, 18 Ohio St. 311, merely decides that where pursuant to directions in a father's will an actual partition of lands was made by commissioners among his children, two of whom thereafter exchanged the parcels allotted to them by conveyance, reciting, but actually without, any money consideration, and one of them thereafter died intestate, the parcel conveyed to him in this exchange was acquired by purchase and not by descent.

It has now been definitely decided in Ohio, however, that a purchaser at a sheriff's sale in partition takes by purchase only the shares of his co-tenants and that the partition does not change the status of his own share which he still holds by descent. *Lawson* v. *Townley*, 90 Ohio St. 67.

The Ohio statutes relating to partition are somewhat different from our own. In a partition proceeding in that state commissioners are appointed who make actual partition, if possible. If this cannot be done they report the fact with the appraised value of the property and any of the parties may elect to take the land at such value upon payment to the other parties of their proportion. If no such election is made, an order of sale to the sheriff is issued by the court and a public sale is had; and where a party purchases he receipts to the sheriff for his own share of the purchase money and pays the balance in cash.

In the case last cited the court did not follow or comment upon the rule intimated in *Freeman* v. *Allen*, 17 Ohio St. 527. In that case the court distinguished between the election of a party to take the property at its appraised value and his purchase at public sale, saying: " A plain distinction is made between the two cases in the amount of money to be paid. In the case

of a sale — which may be to any one — full payment is required; but in case of an election — which can be made by parties only — payment of the amount due to the other party is all that is required. The theory of the statute would seem to be, that upon a sale the entire title may pass to the purchaser; but that on an election by a party, only so much passes as is not already vested in him; or, in other words, that the election operates in consideration of money paid, to extinguish the title of all parties except that of the party taking it. The party who elects to take the land, is thus left with a title cast upon him by law to the extent of his inheritance, and with a residue of the title to the full estate perfected by his own acts. It follows that his title comes in part by descent and in part by purchase.''

In Indiana, however, it has been held that a widow who purchases at a commissioner's sale in partition proceedings land of which her husband died seized, paying no money but assuming a mortgage and receipting for her distributive share of her deceased husband's estate, takes by purchase and not by descent. *Spencer* v. *McGonagle*, 107 Ind. 410.

So far as I have been able to learn, Ohio and Indiana are the only states whose courts have passed upon the specific question involved in the case at bar. Decisions in other states are, of course, dependent largely upon their statutes and the policy of their law. How far the courts of this state will follow them depends upon the extent to which rulings coincide with the policy of our own law. In determining the policy in this case, we may start with the proposition that the statute involved is in derogation of the common law, and must therefore be strictly construed. The property must have been an inheritance when it came to the intestate, and it must have come to her on the part of her father

directly, either by devise, gift or descent. *Kidney* v. *Waite*, 178 App. Div. 260.

In *Champlin* v. *Baldwin*, 1 Paige, 562, it was held that property did not come to a daughter by descent from her mother where it was purchased for her by her father with moneys belonging to her deceased mother.

In *Nicholson* v. *Halsey*, 1 Johns. Ch. 417, a daughter was held to have acquired a legal estate by purchase to lands for which her father had paid but received no conveyance, and which were thereafter conveyed to her by one who had taken title thereto after her father's death in trust for her benefit.

It has also been held in this state that where actual partition of land is made between heirs the character of the part set off to each heir is not changed by reason of the partition and that the estate in such parcels is derived not from the decree but by descent. *Adams* v. *Smith*, 20 Abb. N. C. 60; *Conkling* v. *Brown*, 8 Abb. Pr. (N. S.) 345.

These decisions, while they do not involve the precise question here presented, illustrate how closely the courts have construed this statute. The question is purely legal and its solution does not depend upon equitable considerations. In the language of Lord Mansfield, quoted in *Champlin* v. *Baldwin, supra:* "What equity has one set of heirs more than another?"

Did the share of this property which originally came to Mary Ella Sarles on the part of her father so continue within the meaning of the statute until her death, or did the partition sale operate to extinguish her title by descent and create a title in her by purchase? Of course, if the partition sale was nothing more in legal effect than a means of purchase of the outstanding titles, other than her own; if in law it had

no other effect than a mere division of the estate, the question is at once solved. But it seems to me that the sale in partition went much further than this. It is, of course, true that the real purpose of a partition suit is to divide the land in specie among the co-tenants, and if that is impossible to sell it and divide its proceeds. What then is the result of such a sale? The realty is undoubtedly converted into personalty and is consequently no longer an inheritance. In this case whether the money arising from that conversion was used in part payment of the purchase price, or whether the purchase price was otherwise paid, it seems to me that what Mary Ella Sarles acquired by her purchase at the sale was so acquired independently of any right or interest which had descended from her father. She bought in competition with the whole world, with no other right to purchase than was enjoyed by a mere stranger to the title. She undoubtedly had an absolute right to sell her lands and convert them into money and thus destroy the ancestral nature of the estate and break the line of descent, even though she thereafter repurchased the same lands. Clearly heirs at law have no vested right in their ancestors' property which must be preserved inviolate for their benefit. In my opinion the partition sale effected precisely the same result. Her ancestral real estate was converted into money and the line of descent broken. It also seems clear that after the partition sale the only property which she possessed which came directly from her father was her share in the proceeds of sale. It seems equally clear that the like share in the real property could not also be said to have come directly from her father.

In actual partition the division of the land itself and the allotment and transfer of title of portions equal to the respective shares of the tenants in common therein

is confined exclusively to such tenants. No stranger to the title may obtain through such a proceeding any interest in the property. On the other hand, at a partition sale the entire property and the title thereto is thrown upon the market and he who will, be he tenant in common or otherwise, may purchase. In other words, a tenant in common who purchases stands in no better nor worse condition at the sale by reason of his tenancy than a stranger. He secures through his purchase the same thing in the same way, upon the same terms and conditions and by virtue of provisions of the same decree. Clearly a stranger purchasing at such sale acquires his title by purchase. What process of reasoning compels the application of a different rule to the purchase by a tenant in common?

The mere fact that one of the tenants in common bids in the property at the sale and takes a referee's deed, does not make him any the less a purchaser because he may pay on account of the purchase price the portion of the proceeds of sale representing his share or interest in the property. It must be borne in mind, although it is usual in partition suits to allow the tenant in common who purchases at the sale a deduction from the purchase price equivalent to the amount of his share in the proceeds of sale, he has no absolute right to such deduction. In theory he pays the entire purchase price, obtains his deed and upon distribution receives his share of the net proceeds. As far as appears from the record in the partition suit referred to, William Henry and Mary Ella Sarles paid their purchase money, received their deed, and subsequently their share in the proceeds of sale.

It will also be observed that although William Henry Sarles was the purchaser at the sale the referee's deed ran to him and Mary Ella. Whether he bid in the property at the sale for himself and his sister, or

whether she subsequently and prior to the execution of the deed purchased from him a half interest and took an assignment thereof, does not appear from the record, and is really of no importance. If the referee's deed, however, had been to William Henry Sarles, and Mary Ella Sarles had then purchased from him and taken a deed of a half interest, paying in part therefor with moneys received as her share in the proceeds of sale, no one will contend that such title was not secured by purchase. I can see no distinction in principle between that and the actual transaction that occurred. It was in any event, in my opinion, a purchase.

Clearly, the purchaser at such a sale, whether a tenant in common or otherwise, takes the entire title including his own share or interest in the property, not by virtue of its descent from his ancestor, but because he is the highest bidder and has paid the price. Were he not such bidder his interest in the property by descent would be of no avail. The land itself is freed from every claim of the former owners or of any one claiming under them while they held it as co-tenants. In other words, the interest of a tenant in common in the land as such is effectually divested by a partition sale and neither he nor any one claiming under him as such tenant can assert his former tenancy as a basis of title as against the purchaser. It is merged in the entire title conveyed by the referee's deed. Thereafter it attaches to the proceeds of sale which represents the land sold, and a co-tenant's share therein is measured by his former interest in the land. I think this shows the distinction between an actual partition and a partition sale. The former is an actual division and allotment to each co-tenant of his share in the land. He gets nothing more than he already has, except that where it was previously undivided, it is now divided and a particular portion of the property

Supreme Court, September, 1919.        [Vol. 108.

allotted to him exclusively. The latter involves no division or allotment of the land itself, but the entire title thereto goes to the purchaser. The division and allotment to the co-tenants is their respective shares in the proceeds of sale. It is, of course, true as urged by the guardian *ad litem* that the purchaser acquired only the interest of all the tenants in common, parties to the suit. But that principle applies simply to the extent of the title conveyed by the referee's deed, not to the descendible quality arising from its derivation.

I conclude therefore that no part of the land in question descended to Mary Ella Sarles from her father and that the relatives of her mother are entitled to share.

None of the brothers or sisters of the intestate's father and mother are now living, the only relatives being cousins and their descendants. There are therefore two stocks on the paternal and three on the maternal side, each of which is entitled to one-fifth. Plaintiff therefore takes one-fifth, defendant Newey one-fifth, and each of the defendants George and Henry Nelson, Wright and Flora Hoag, and Louis and Flora Dean one-tenth. This differs from the mode of division submitted by plaintiff, who makes but two stocks, one the sister of the intestate's father, Prudy K. Nelson, and the other the sister of her mother, Almira Wright. But provisions of the Revised Statutes similar to those contained in sections 86, 87 and 88 of the Decedent Estate Law have been construed in accordance with the division here directed. See *Hyatt* v. *Pugsley*, 31 Barb. 655; 33 id. 373.

Decision and interlocutory judgment is directed in accordance with this opinion to be agreed upon or settled on notice.

Judgment accordingly.