MARTHA WRIGHT by next friend, etc., v. DAVID WEST
and R. C. WRIGHT.

WIDOW.  *Dissent from will.  Incapacity from unsoundness of mind.*  A widow
who has not dissented from the provisions of her husband's will within
the time prescribed by law because of incapacity from unsoundness of
mind, may, in equity, claim her rights in the estate as though she had
dissented.

FROM ROBERTSON.

Appeal from the Chancery Court at Springfield.    C.
G. SMITH, Ch.

J. J. TURNER for complainant.

J. E. & A. E. GARNER for defendants.

COOPER, J., delivered the opinion of the court.

Reuben Wright died on the 27th of May, 1869, leaving a widow, complainant, Martha Wright, and eight children by a former wife.  He left a will, the only provision of which for his widow is thus worded: "I will to my wife Martha the tract of land she owned before our marriage, also the mare, and all the household furniture that she brought here, and also my buggy."  At the death of the testator, and for the two preceding years, the wife, Martha Wright, was of unsound mind, and so continued until the filing of this bill on the 31st of December, 1872.  The bill was filed for dower in the lands of which the husband died seized and possessed, for the year's allowance given by law, for a distributive share of the personalty, and for the value of exempted articles, upon the ground that she was thus entitled as if she had dissented from her husband's will within the time prescribed by law.  In the meantime the defendants, R. C. Wright and David West, who were appointed and had qualified as executors of the will, had sold the land and personalty and distributed the proceeds, after the payment of debts and the costs of administration, to the children of the testator.  They had, shortly after the testator's death, delivered to the brother-in-law of Martha Wright, who had the custody of her person, the articles of personalty mentioned in the will, he giving a receipt therefor.  The defendant, David West, had bought the land shortly after the testator's death, and was in possession, and he was

made a defendant individually as well as in his ca-
pacity of executor.

The defendants answered the bill, and, as executors,
filed a cross-bill against the complainant and the chil-
dren of the testator to have contribution from the
latter out of the moneys paid them for the propor-
tional part of each in any recovery had by the com-
plainant. They also relied, as they had previously done
in a demurrer which was overruled, upon the point
that the widow had not dissented from the will within
twelve months from the probate of the will, as re-
quired by the Code, sec. 2404, and could not do so
by reason of her unsoundness of mind, and was thereby
barred of all claim against the will. Some stress was
also laid upon an alleged ante-nuptial parol settlement
between Reuben and Martha Wright, by which the
latter waived all right to her husband's property. The
Chancellor held that the complainant was entitled to
the relief sought, subject to be charged with the value
of the articles delivered under the will, which it ap-
peared went to her benefit, and the defendants to a
decree over, upon their cross-bill, against the children
of the testator for their proportional part of the re-
covery. The defendants appealed.

Any ante-nuptial contract in parol was, of course,
void under our statute of frauds. Code, sec. 1758,
sub-sec. 3. *Hackney* v. *Hackney*, 8 Hum., 452. The
rights of the parties turn upon the question whether
a widow, who has not dissented from her husband's
will within the time prescribed by law because of un-

Wright *v.* West and Wright.

soundness of mind, may, in equity, obtain relief "as if she had dissented."

The doctrine of election of rights grew up independent of statute, and was applied in several classes of cases. One of these classes was that of a widow required to elect between the provisions of her husband's will and her legal rights of dower at common law. She might be put to her election at law by express words (*Gosling* v. *Warburton*, Cro. Eliz., 128), and in equity by manifest implication. *Birmingham* v. *Kirwan*, 2 Scho. & Lef., 452; *Whilder* v. *Whilder*, Riley Ch., 205; *Herbert* v. *Wren*, 7 Cranch., 378; *Adsit* v. *Adsit*, 2 Johns. Ch., 448. But the difficulty of applying the principle of manifest implication led to uncertainty and confusion. To obviate this evil, in several of the States, statutes have been passed requiring the widow to elect, within a given time, between her husband's bounty and her legal rights. 1 Wash. on Real Prop., 272. Among these statutes was the North Carolina act of 1784, 22, 8, which continued in force in this State, with slight modifications, until brought forward into the Code, with the modifying acts, in sections 2404 and 2405. That section was, in substance, that if the husband made a will without any express provision for his wife, by giving her such part of his real or personal estate, or to some other for her use, as shall be fully satisfactory to her, such widow might signify her dissent in open court within six months after the probate of the will, and in that case shall be entitled to dower in the lands of which the husband died seized and possessed, and one-third,

6—VOL. 2.

or a child's part, of his personalty. Under this, and
similar statutes, the decisions are that the right of
election is personal, and must be exercised strictly as
required. *Hinton* v. *Hinton*, 6 Ired., 224; *Harry* v.
*Green*, 9 Hum., 182; *Collins* v. *Corman*, 5 Md., 503.
As a necessary sequence, if the widow be incapable of
acting because of lunacy, it has been held that she
cannot make a valid dissent, nor, of course, can her
committee, if there be a committee. *Lewis* v. *Lewis*,
7 Ired., 72; *Kennedy* v. *Johnston*, 65 Penn. St., 451.
This is in strict accord with the doctrine of election
at common law, where it has been invariably held
that a lunatic cannot elect. *Ashby* v. *Palmer*, 1 Mer.,
296; *In re Wharton*, 5 De G. M. & G.—Nor can an
infant. *Carr* v. *Ellison*, 2 Bro. C. C., 56; *Van* v.
*Barrett*, 19 Ves., 102; *Burr* v. *Sein*, 1 Whart., 252,
265. And neither the committee of the lunatic, nor
the guardian of the infant, can elect for the ward,
the election being a judicial, not a ministerial act, and
belonging to the court having jurisdiction. *Turner* v.
*Street*, 2 Rand., 404; *Ebbington* v. *Ebbington*, 5 Mad.,
117; *Gretton* v. *Howard*, 1 Swanst., 413. And per-
sons thus under disability may be forced to elect at
the instance of the executors or persons interested un-
der the will. *Vane* v. *Lord Dungannon*, 2 Scho. & Lef.,
118, 133; *Wilson* v. *Townsend*, 2 Ves. J., 696; *Robert-
son* v. *Stephens*, 1 Ired. Eq., 247; *Addison* v. *Bewie*,
2 Bland, 606, 623; *Taylor* v. *Browne*, 2 Leigh., 419.
On principle, it would seem clear that the same rules
would apply to an election required by statute, as to
an election required by the common law.

The doubt grows out of the limitation of the time within which the dissent is required by the statute to be made. In *Lewis* v. *Lewis,* 7 Ired., 72, and *Kennedy* v. *Johnston,* 65 Penn. St., 451, in both of which the lunatic widow, by her committee, was attempting to assert a legal right upon the assumption of a valid dissent within the time prescribed, the court, while holding that neither the lunatic nor the committee could make a valid dissent, waive the consideration of the widow's equitable rights in view of the impossibility of making a valid election, with an intimation that the questions belong exclusively to the court of chancery. The point is also pretermitted expressly by this court in *Smart* v. *Waterhouse,* 10 Yer., 103, because not directly raised by the facts of that case. I am unable to find any decision on the point. It seems to be entirely open. But, in principle, it presents, I think, no serious difficulty.

These statutes, and notably the provisions of the Code, require an exercise of the mind by a competent person, with knowledge of the facts. The very act of election implies these requisites, and it was so held by the courts on general principle. The Code, sec. 2405, expressly requires the personal representative of the estate, upon the application of the widow, to disclose the condition of the estate, to enable her to act as her interest may require. Of course, if she cannot dissent because of her want of capacity, she cannot make this application. To hold that she is deprived of her election, when she could not possibly make it, would be an unsatisfactory construction of a

statute which manifestly contemplates an intelligent election. If, independent of the statute, a testator were to make provision for his wife, saying in so many words that it was in lieu of dower, and were to require an election by her within twelve months after the probate of his will, it would scarcely be argued that the wife, if an infant or a lunatic, would be barred by the failure to elect within the time. The only object of the statute was to limit the period of the widow's election, not to change in other respects the well-settled principles of law on the subject. And, although the limitation is, in some respects, analogous to the statutes of limitations, it differs from those statutes in one essential particular. A suit may be brought at any time, and by any person, to assert the rights of an infant or a lunatic in the courts of law, whereas the election of a widow, as we have seen, cannot be made by a lunatic, nor by any person for her. Construing the statute literally, she is utterly without remedy, and if the statute be equitably interpreted, to allow an election by the court for the lunatic under a bill commenced by a committee, or next friend, within the year, the letter is departed from, and equity must equally interpose if satisfied that the lunatic had no committee, and no next friend to sue for her.

But this court has decided that the statute is not so inflexible as the literal interpretation would imply. In *Smart* v. *Waterhouse*, 10 Yer., 94, it was held that a widow, who had been prevented from making her election within the year by the fraudulent conduct of those interested in the estate, might afterward assert

her rights "as though she had dissented in time." And if she may thus avoid the letter of the law by reason of the strong equity of the particular circumstances, there is no insuperable difficulty in granting the same relief, upon well established equitable principles, where the equity is stronger. There, the widow might, by calling in the aid of third persons or counsel, have ascertained the facts, and made an intelligent election. Here, she was incapable of electing, incapable of consulting others, without any committee, and, it seems, without any friends to act for her. It is impossible to conceive of a stronger array of equitable circumstances to justify the court of chancery in now asserting her rights "as though she had dissented in time." Nor am I able to see any serious evil which can arise from the exercise of so plain an equity. The executor who is compelled to settle with a lunatic devisee or legatee, without a committee, must necessarily come into equity for protection. He would have been under the necessity of so doing, before the statute, if the testator had made an express provision for his widow in lieu of dower, and she had been a lunatic. And he may clearly do so since the statute. If he and the persons taking under the will choose to act otherwise, they do so at their peril, as they would in any other case where there is an infant or lunatic devisee without guardian or committee. Mere delay, and the negligence of friends, this court has held, will not be allowed to prejudice the rights of one in no condition of mind to know or assert them. *Alston* v. *Boyd*, 6 Hum., 504.

There is no error in the Chancellor's decree, and it is affirmed with costs. The complainant has, it seems, died since the appeal to this court, and the allotment of dower is no longer required. The necessary accounts can, probably, be taken on the evidence in the record without remanding or the cost of additional proof.

FREEMAN, J., delivered a dissenting opinion.

Mrs. Wright, by next friend, etc., against R. C. Wright, executor (and individually), and David West, is a bill filed by complainant as widow of the said Reuben Wright, seeking to have dower assigned her in the lands of which her husband died seized and possessed, an account for rents, also her year's support from the personal estate, and articles exempt from execution. In addition, she seeks a child's part of the personal estate. This bill is filed December 31, 1872. The husband died June, 1869, leaving the will to which we have referred.

The will was duly proven a short time afterward, and the executors therein appointed entered upon the execution of the same. They had, before the filing of this bill, completed the administration of said estate, distributed the personalty, and settled their trust in the county court.

By the husband's will the wife was given, in terms, a tract of land that she owned before their marriage, also "the mare," and all the household furniture that she brought here, also his buggy. No other provi-

sion is made for her    She seems to have received what was given her, or her friends did for her.    This bill is filed against R. C. Wright as one of the executors, and David West individually, though it is probable he is the same David West who is joint executor with the other defendant, Wright.    He, however, seems to have been sued as the purchaser of the 160 acres of land of which the husband was owner at his death.

The husband having died testate in 1869, and the will proven in that year, the time had long passed in which she could dissent from the will when this bill was filed.    Code, sec. 2404.

This is sought to be avoided in this case by the fact charged, and which is shown to be true, that she was insane at the death of her husband, and had been for a number of years before, and continued so at the fiiling of this bill.    It is further stated that the executors had proceeded to administer the estate and distribute the same without noticing or recognizing that she had any interest or rights in the same—had never informed either her or her friends of the condition of the same.    The case turns mainly if not entirely on this state of facts.

There is no evidence of any fraud or misconduct on the part of the executors injuriously affecting her rights.    On the contrary, the estate seems to have been promptly and openly wound up, and settlement regularly made.

The question whether in such a case the simple fact of mental incapacity existing in the widow at the death of her husband and probate of the will, entitles

her to the property to which she would have been entitled in case of dissent to the will on a bill or proceeding for that purpose in her name, by next friend, filed after the twelve months given her to dissent, in fact several years after, and after a final settlement of the estate.

It is evident our statutes have failed to make any provision for this precise case. For many years, in fact since the North Carolina statute of 1784, sec. 8, the widow, where a satisfactory provision was not made for her, could dissent from such will, and be remitted to her rights, as if no will had been made.

This dissent is required by our Code to be made within twelve months, and to be done either in the county or circuit court of the county. Unless this dissent was made it was uniformly held, before the Code, if any provision was made for the widow out of the real or personal estate, she was compelled to her election; otherwise she was bound by its provisions, and took only what the will gave her, and could never afterward claim any dower or distribution out of property of which her husband may have died intestate, or undisposed of. Meigs, 388; 8 Hum., 579; 3 Head, 218; and if she dissented she took nothing under it. 9 Hum., 195. Since the Code, sec. 2429, and the act from which it was taken, it has been held, however, that by a fair construction of the act and Code, where the widow accepts the provision made for her under the will, within the time limited, she is nevertheless entitled to her distributive share of per-

sonalty out of any property of which he dies intestate. *Demoss* v. *Demoss,* 7 Col., 259.

This is all well settled law, and fixes unmistakably the rights of a widow in the cases provided for, where she is *compos mentis,* capable of acting for herself, understanding her rights.

There being no provision in the statute for this precise case, nor any case where the question has arisen in our State, we are compelled to solve it, upon principles established in analogous cases, with proper reference to what is the best public policy, and what will most nearly attain the ends of general justice. The fact that this may seem a hard case, can have but little influence on our conclusions, as this is the first case of the kind ever before this court in upward of eighty years, showing such evils as may be found in it, are of remarkably seldom occurrence. A case occurring so seldom can scarcely demand that we should strain the analogies of the law, or depart from settled principles in order to meet its apparent hardships.

It being settled by our law that the husband may, by will, dipose of his property as he chooses, and make a different provision for his widow than that provided by law—and this right is secured by legislative enactment—it follows that the courts are bound to carry out such a will in good faith when it comes before them.

It is also settled law that an executor may be appointed by a testator, whose duty it is to execute that will. For this purpose he is sworn to the performance of this duty, and gives a bond well and truly

to perform it according to law. From the provisions we have cited, it is equally clear the rights of the widow have been carefully guarded by our Legislature, and their rights are all defined likewise by clear and definite statutory provisions. To these we must alone look for the rights of a widow in our State in such cases.

The statute has fixed the right of a widow to dissent from the will of her husband if its provisions are not satisfactory to her. She stands on this statutory right so far as her dissent to the will is concerned, and in case of doing so, takes, under the provisions of the statute, not what the will has given her, but her dower (her ancient right), and a distributive share of the personalty.

This is all clear in the case of a widow under no disability. The question, however, is, what shall be the rights of a widow who is a lunatic, consequently unable to exercise her right of election, which evidently involves discretion and judgment? This case is not provided for by the statute, and we must endeavor to settle it upon general and established principles.

The cases of election well known in our law between two inconsistent rights, where, by retaining the one claimed under a will or deed, others will be defeated of just claims, or the evident intention of testator or grantor not be carried out, furnish an analogy to guide us to a certain extent. Under these cases it is settled that a party having an interest to assert such as a party who would be affected by the claims

of a person under disability, may come into a court of equity and ask that court, upon proper inquiry, to elect for the person so disabled. But all these cases arise under wills or deeds where the claim is, by the party, sought to be compelled to elect under the will of a testator or a deed, and none that I have been able to find where she sets up a claim adverse to the will or deed. There may, however, be such cases. In view of the general doctrine, however, we see no difficulty in holding that in a case of disability a widow might come into a court of equity and assert her right by her next friend, guardian or committee. This is the established mode by our law by which such parties sue and are sued. The right must exist in such a case, however, by law, and this brings us to the main question in this case, that is, whether the widow or person under disability has to assert that right in the time prescribed by the statute, or has during the entire period of disability and until its termination in which to do so.

The suit in this case is brought within about three years, we believe, after probate of the will, but if it can be brought two years after the time fixed by the statute in which the dissent shall be made, it may as well be brought in twenty, or any other period, the disability continuing. In fact, in order to maintain the right after the period fixed by the statute, we are compelled to hold there is no period of limitation whatever on the right while the lunatic lives, and it would become difficult to see why it would not go to her representatives after her death as on the theory,

she could never forfeit her rights, nor they be bound because of her want of capacity. In fact, in this case the widow is now dead, and the suit is revived in the name of her personal representative, and being prosecuted for the benefit of others, not herself, and those persons not related to the testator.

We look for a moment at the consequences of such a holding. The law imposes upon the executor the duty of settling promptly the estate, paying over legacies, and it may be making titles to lands devised, or the devisee takes them under the will. They are sold, as in this case, by the devisee, and the estate settled up, the legacies paid to the legatees, or distributed according to the terms of the will. After all this is done, and done according to the imperative requirements of the law, on the penalty of being guilty of a breach of trust in the execution of the will, according to his oath and bond, a next friend of the widow may, ten or twenty years after, file a bill like the present, ask the court to elect for her, have all that has been done, and done according to law, disturbed, broken up, and the whole estate re-adjusted, involving an account of what has been received by legatees, a re-adjustment of the proportion of land devised, a litigation that may be of the most complicated and expensive character in its settlement, and which may present questions of law of the most difficult solution, as in the case of the purchaser of land from the devisee.

The argument of Judge Green in the case of *Harry et als.* v. *Green et als.*, 9 Hum., 184, in holding that

Wright v. West and Wright.

she must dissent within six months (the time then prescribed) after probate of the will in common form, and not six months after the establishment of the will, where it was contested, seems conclusive on this question. He says the privilege of dissent given by the statute, and the rights dependent on such dissent, can only exist in cases where the dissent shall be signified within the time limited, unless the widow is prevented from entering such dissent by fraud. This limitation is "within six months (now twelve) after the probate of the will," he then holds the will was proven, under the statute, when it was presented in the county court as required by law. "To hold otherwise," he adds, "would involve estates in ruinous and endless confusion. A will proven in common form might be acquiesced in for a number of years, and the estate be distributed according to its provisions, the widow enjoying the provisions made for her. A contest might be got up in relation to its validity, and upon the termination thereof, in favor of the will; the widow, according to the argument, might dissent in six months and upturn the whole estate in order to obtain her distributive share. Such consequences must be ruinous, and could never have been contemplated by the Legislature." These remarks apply with equal if not greater force to the question now before us. Unless some imperative rule of law should demand, or some pervading and wide-spread injustice countervail these evils, it would seem these considerations ought to be conclusive upon our decision of this question.

It may be said the executor may apply to a court

of equity and invoke its action in the matter, and thus meet the difficulty. While I might concede for the argument that he could do so, yet the concession would not aid the party in this case, for he has not done so within the time prescribed by law, and so the right by the statute is gone, unless we shall adopt the logical result of holding that in case of persons under disability there is no limit upon the exercise of the right, and then we are met by the consequences so ably presented in the opinion cited of Judge Green, and they cannot be avoided or evaded.

The only ground on which this view can be plausibly sustained is, that it is the duty of the executor to act for the widow, and his failure a fraud on her rights, for fraud is the sole ground on which an exception can be made to the time fixed in the statute. That no such duty is imposed on him we think is clear. He is executor of the will—is sworn to execute its trusts. In so far as the wife may take under the will, he is a trustee for her as well as any other legatee, but to say he is also a trustee charged with the duty of instituting proceedings by which the will is to be defeated or rendered inoperative, is to charge him with antagonistic duties so conflicting as to be almost if not quite irreconcilable with fairness or their faithful performance. It would be equally as logical, we think, to hold that it was his duty, in case the will did injustice between the children of the testator, or was subject to a suspicion that it had been obtained by fraud, that he should institute proceedings to contest it, and have it set aside to the extent of

the widow's portion, this is the practical effect of her dissent to its provisions. In such a contest, however, it is now settled by our law, he is bound to maintain the will, and is entitled to pay the expenses out of the estate.

We have seen no case in which it is held the executor is charged with the duty of asking a court of equity to elect for a married woman or a person under disability; nor any case, even, where it has been held that the executor might file such a bill. His duty is to execute the will as he finds it.

If claimants under the will have rights conflicting as between themselves, they may file a bill to have them settled; and in case a person under disability is required to elect between conflicting or antagonistic claims, the court will, after inquiry, make an election for them. But no such duty is, by any case we have seen, imposed on the executor, nor is his right to file such a bill discussed or adjudged. We have examined the cases of *Birmingham* v. *Kirware*, 2 Schoales and Lefoy, 444; *Wilson* v. *Townsend*, 2 Vesey Jr. 93; *Taylor and wife* v. *Browne et als.*, 2 Leigh, 454; 2 Bland, 606; 2 Johnson Ch. R., 448. and the case of *Robertson* v. *Stephens*, 1 Ired. Eq., 247. In all these cases the doctrine is laid down and discussed of election by the court for persons under disability, but none of them, as we understand them, discuss the right or duty of the executors to file such a bill, nor hold that he can or ought to do so.

They were cases between claimants under the will seeking to compel election in some of them by a wife,

and in others by infants, but, as we have said, none of the cases assume it to be the duty or right of the executor to file such a bill, nor do we believe the executors were parties to the proceedings in most of the cases, if in any. Certain it is, their existence as parties is not attended to as ground of any of the opinions. If no such duty is imposed on the executors, then there could be no fraud on the widow in their not doing so, and fraud we think the only ground on which an exception to the time fixed in the statute can be allowed.

We have presented the main arguments in favor of the position that the right must be asserted within the time prescribed by the statute, based on public policy. This view is strengthened, we think, if not made conclusive, by the application of a principle so well settled in reference to the statute of limitations in our State as to be almost axiomatic. It is that where the statute makes no exceptions in favor of persons under disability, the courts can make none. In view of this principle all of our general statutes make such exceptions in favor of the rights of infants, *femes covert* and persons of unsound mind. Judge McKinney thus gives the rule in *The State* v. *Crutcher*, 2 Swan, 512: "It is well settled that a statute of limitations runs against and bars the rights of all persons not expressly mentioned and excepted out of the statute. Persons not expressly excepted cannot be exempted by construction, and therefore infants and other persons laboring under disabilities are embraced by the general words of a statute, if there be no saving clause in

their favor," and this notwithstanding the general rule that laches or negligence is not to be imputed to such persons, and on this laches rest the principle of such statutes. In that case the principle of requiring suits to be brought against the estates of deceased persons within seven years, was applied to the State, notwithstanding the established rule that no laches is even to be imputed to the State. The rights of the widow in this case can alone be saved by holding the opposite of this, on the ground of her disability.

It is conceded that the time in which the dissent of the widow shall be signified, is not technically a statute of limitations, so as to be included in the Schedule to the Constitution of 1865, suspending the general statutes of limitation. But the principle of the one statute is precisely the same as in the other. It is a time prescribed by the Legislature in which a right shall be asserted or claimed, and the rule of construction must be the same. The principle on which the rule rests, as to the statute of limitations. is equally applicable to the one statute as the other. It is, that the Legislature have fixed the time in which the right shall be asserted. It is an arbitrary period, not based in the nature of things at all, and might as well be fixed at one period as another, if the Legislature choose.

That persons under disability might leave rights to be barred or cut off by these statutes is well known to the legislative body, and if that body enacts a period in which that thing shall be done, and yet fails

to provide an exemption from its operation of such persons, it may fairly be presumed that for satisfactory reasons of public policy, it was deemed best that no such exemptions should be made, and therefore the courts could make none. These reasons apply with all their force to this case. We do not see how they can be escaped, unless we shall add to or amend what the .Legislature have enacted, and make an exception which they have not made. That the construction contended for would be an amendment or addition to the law as it stands, is evident. If the Legislature should enact that, nevertheless, if the widow was an infant, or of unsound mind, she should not be required to dissent until such disability is removed, this would certainly be an appropriate amendment of our present statute. If we so construe it, is it not inevitable that *we* do that which is the function of the Legislature? This is not our province, and can be more appropriately performed by that body than by us, even if we had the power, because they can arbitrarily fix the period in which this may be done, impose the duty upon some one or a court if deemed best to represent the widow, and say how long after the disability ceases, before the right shall cease; in a word, can regulate the proceedings so as to avoid the evils we have shown likely to result from our so construing the statutes, which we cannot do. In this view we think it far better to follow established principles, rather than bend them to meet hard cases. The evil in this case, as we have said, is not a great one, as shown by the fact that this is the only case

that has occurred since the organization of the State, a period of more than eighty years.

It may be said that the courts have made the exception to the statute in case the widow is fraudulently prevented from making her dissent. This is true, but may be met by the proposition that the well known and universal principle of our law is and was, that an act prevented by fraud was always considered and treated as done by courts of equity, and the same consequences followed as if the act had been done. Therefore the Legislature might well have acted in view of this principle, and its application did not trench upon the other principles equally established in the construction of such statutes.

No such rule, however, is found in our law, as to persons under disability. On the contrary, the rule is the opposite — that is, that such persons are included, unless in terms exempted; therefore it must be assumed that the Legislature acted in view of this rule, and may be held to have so intended, by not expressing the contrary.

We do not perceive the force of the distinction between the case of a widow of unsound mind, as to her dissent, and the statute of limitations in its operation upon persons under disability, based upon the idea that a suit may be brought at any time and by any person to assert the rights of such parties in a court of law. While this is true, the suit must always be brought by guardian or next friend, and as we have said, we think the same may have been done in this case in a court of equity to assert the right of a

widow, by virtue of its original jurisdiction over the question of election in cases of persons under disability — when that court would look carefully to, and see that done for her which was best to be done, after an investigation of all the facts necessary to a proper conclusion.

There is also an essential difference between the provisions of a will requiring an election in twelve months as to property given by said will. The effectiveness of such provision or requirement would depend on the legal right of the testator to impose the limitation. The act of the Legislature is authoritative and imperative upon all, and is to be the measure of the rights of all.

In view of these considerations we hold, that while in case of a lunatic widow, her right upon principles of equity may well be asserted by a next friend in that court, and the court be invoked to elect for her as to whether she shall take what the will gives her, or against it, yet that in such case no court has a right to disregard the time fixed by the statute in which this must be done — therefore such a proceeding must be instituted within the twelve months prescribed, or else by the language of the statute no such right exists, therefore cannot be enforced in any court — courts of equity being as much bound by the statute as courts of law.