IN THE MATTER OF THE ESTATE OF STEPHEN ANDREWS, DECEASED. CHARLES B. ANDREWS ET AL. V. JOHN BASSETT, ADMINISTRATOR OF THE ESTATE OF MARY ANDREWS, DECEASED.

[See 87 Mich. 167.]

*Will—Election for incompetent widow.*

1. How. Stat. §§ 5824, 5825, which provide that the testamentary disposition of personal property by a husband shall be subject to the election of his wife to take the interest bequeathed to her, or, in lieu thereof, the share that would have passed to her under the statute of distributions if the husband had died intestate, subject to certain limitations as to amount, and that such election, if to take otherwise than under the will, shall be made in writing, and filed in the court in which the estate is being settled, within one year from the probate of the will, and, if not so filed, that she shall be deemed to have elected to take under the will, are construed as follows:

*a*—The failure of an incompetent widow to file such election within the statutory year will not be deemed an assent on her part to take under the will.

*b*—An election made for an incompetent widow by her guardian, with the consent of the probate court, as evidenced by an order entered for that purpose, is a valid election.

*c*—Where such election is filed within six months after the making of the order adjudging the widow incompetent, there is sufficient before the probate court to satisfy the probate judge of her incapacity to act for herself.

*d*—Where the guardian of an incompetent widow applied to the probate judge as to what he should do regarding the matter of her election, and it appears from the order of the court that he made known to the court the value of the estate, the age of the widow, and the value of her estate, and that the terms of the will were then discussed by the judge and guardian, and that he was advised that he should, as guardian, do as he would were he the widow, and possessed of mental capacity to act in the premises, whereupon he declared in open court that he would elect for the widow to take under the

92 MICH.—29.

statute, which election was drawn by the register of the court, and signed by the guardian, and filed, all with the knowledge and consent of the court, the election is a valid one.

2. The following general propositions are summarized from the opinion of Mr. Justice McGRATH:

*a*—Under the Michigan statute, probate courts have jurisdiction not only as to all matters relating to the settlement of the estates of deceased persons, but as to the estates of minors, and all others under guardianship; which jurisdiction embraces not only the appointment of guardians, and control over their official conduct, but the care and protection of the estate of the wards.

*b*—A very large portion of the old equity jurisdiction has been vested in the probate court, and courts of chancery have only jurisdiction of matters relating to the settlement of estates in those cases in which an adequate remedy does not exist in the probate court; citing *People v. Wayne Circuit Court*, 11 Mich. 393.

Error to Wayne. (Gartner, J.) Argued June 14, 1892. Decided July 1, 1892.

Appeal of defendant from an order of the probate court refusing to confirm the election by the guardian of an incompetent widow to take under the statute rather than the will of her husband, and assigning the residue of the testator's estate. Plaintiffs bring error. Affirmed. The facts are stated in the opinion, and in 87 Mich. 167.

*Sidney T. Miller*, for appellants.

*Conely, Maybury & Lucking (A. H. Wilkinson*, of counsel), for defendant.

McGRATH, J. The facts in this case are fully set forth in *Bassett v. Durfee*, 87 Mich. 167, which was an application for a *mandamus* pending this controversy, and their repetition here is unnecessary. The sole question is whether an election made by the guardian for an incompetent widow, to take under the statute, instead of

under the will of her deceased husband, made with the consent of the probate court, is a valid election.

In England, formerly at least, courts of chancery had exclusive jurisdiction over the persons and estates of incompetent persons. All guardians were appointed by that court, and it alone had power to commit the person and property of such persons to the custody of guardians. Persons under guardianship were the wards of that court. The guardian was the medium through whom the court acted. Under that system the matter of election belonged to that court, and the right to elect for the ward has been recognized by repeated decisions.

In most of the states, courts of probate, surrogate courts, or orphans' courts have been established, and the jurisdiction thereof fixed by constitution or statute. In some states these courts have limited powers, and the general jurisdiction has been expressly vested in courts of chancery; as, for instance, in Pennsylvania, the orphans' court is clothed with limited powers, and the constitution expressly vests "the power of a court of chancery, so far as relates to the care of the persons and estates of those who are *non compos mentis*" in the court of common pleas. Hence in *Kennedy v. Johnston,* 65 Penn. St. 454, the court held that the guardian could not, of his own motion, relinquish the provision made for the wife in the will of the husband; that the election was a judicial, and not a ministerial, act, and belonged to the court, and not to the committee; that it was the duty of the committee to apply to the court of common pleas having jurisdiction over the person and estate of the lunatic for leave to elect the dower, and, having such decree, he could then proceed to have a record of his election made in the orphans' court. The court simply held that the guardian must invoke the consent or aid of the court having jurisdiction.

Under our statute, probate courts have jurisdiction not only as to all matters relating to the settlement of estates of deceased persons, but as to the estates of minors, and all others under guardianship. That jurisdiction embraces not only the appointment of guardians, and control over their official conduct, but the care and protection of the estate of the wards. Indeed, the grant of jurisdiction to probate courts is so general and extensive under our statute that to the section conferring jurisdiction the Legislature added a proviso that such grant should not be construed to deprive circuit courts in chancery of concurrent jurisdiction.

In *People v. Wayne Circuit Court*, 11 Mich. 393, it is said that a very large portion of the old equity jurisdiction has been vested in these courts, and that courts of chancery have only jurisdiction of matters relating to the settlement of estates in those cases in which an adequate remedy does not exist in the probate court. Probate courts, with us, occupy the same relation to persons under guardianship as did courts of chancery under the English system. They stand *in loco parentis*, in the place formerly occupied by the king, then by the chancellor, then by the court of chancery. The guardian has such powers as are conferred by statute. As to other matters, he must invoke the aid or consent of the court. That jurisdiction being, under our statute, vested in the probate court, the right of election is vested in that court. *State v. Ueland*, 30 Minn. 277 (15 N. W. Rep. 245).

In *Collins v. Carman*, 5 Md. 503, no renunciation by the widow, or by any one in her behalf, was made, or attempted to be made, during her life, and the court, in determining the case, wished to be understood—

"As not intimating any opinion upon the question whether a court of equity can or cannot make an election or renunciation for an insane widow during her life, and in proper time."

In *Penhallow v. Kimball*, 61 N. H. 596, the court say:

"This court, having the powers of a court of equity in cases cognizable in such a court, and having the same protective jurisdiction over the persons and property of lunatics as the English court of chancery, may elect for the lunatic where the lunatic has the right of election. It has the power, and it is its duty, to protect those who have no other lawful protector. In making such election the court is guided by considerations for the benefit of the lunatic, without regard to what the advantage may be to his heirs." *Young v. Boardman*, 97 Mo. 181, 188 (10 S. W. Rep. 48); *Van Steenwyck v. Washburn*, 59 Wis. 502 (17 N. W. Rep. 292); *Wright v. West*, 2 Lea, 78; *Smither v. Smither*, 9 Bush, 230.

*Lewis v. Lewis*, 7 Ired. 72, was placed upon the ground that the statute expressly required her dissent in open court, and upon the further ground that a court of law, which was the court where the guardian filed his petition, had no jurisdiction.

In *Pinkerton v. Sargent*, 102 Mass. 570, it is held that the privilege of waiver is a purely personal right, and its exercise rests in her personal discretion alone; that it is not a question of mere pecuniary advantage; that the widow's knowledge of the family arrangement, the wishes of her husband, equitable considerations known and appreciated only by her, may all have weight and influence in determining her election; and that it is a privilege which cannot be regarded as a portion of her estate.

Our statute (How. Stat. § 5824) relating to wills provides that all dispositions of personal property by last will and testament shall be subject to the following limitations:

"If the testator shall leave surviving him a wife, the testamentary disposition shall be subject to the election of such wife to take any interest that may be given to her by the testator in his last will and testament, or, in lieu thereof, to take the sum or share that would have passed to her under the statute of distributions

had the testator died intestate, until the sum shall amount to five thousand dollars, and of the residue of the estate one-half the sum or share that would have passed to her under he statute of distributions had the testator died intestate; and, in case no provision be made for her in said will, she shall be entitled to the election aforesaid."

Section 5825 provides that—

"The election to take otherwise than under the will in any contingency above contemplated shall be made in writing, and filed in the court in which proceedings for the settlement of the estate are being taken, within one year from the probate of the will; and the failure to file such election within the time above provided shall be deemed an election to take under the will."

This statute gives to the widow an opportunity to assert a right, rather than an opportunity to waive such right. Pecuniary advantages are rarely waived, and it will not do to rest the construction of a statute which confers a substantial right upon purely sentimental considerations. The statute gives to the widow a choice, and it will not be presumed that the Legislature intended that the right of choice should be denied to an incompetent simply because the right to choose involves as an incident the right to waive that choice, and in an isolated case a competent person might possibly conclude to waive the choice. The will does not create the bar, nor does the statute confer a mere privilege. The bar is grounded in acquiescence for the statutory period. The will is subject to the dissent of the widow, and becomes operative by her assent to its provisions. The statute makes her failure to renounce conclusive evidence of her election to accept. The statute contemplates an election either to take under the will or under the statute. In one case that election is evidenced by a writing filed, and in the other by consenting for the statutory period. The one is express, the other implied. An incompetent is incap-

able of consent, and there can be no implication of assent or presumption of acquiescence from the failure of an incompetent to act. *Digby v. Howard*, 4 Sim. 588, 2 Clark & F. 634; *Ashby v. Palmer*, 1 Mer. 296; *Seeley v. Jago*, 1 P. Wms. 389; *Breasted v. Trust Co.*, 4 Hill, 73.

As was said in a very able discussion of the question in *Collins v. Carman*, 5 Md. 503:

"If she is concluded by the omission to renounce, then there is one law for a sane wife and another law for an insane wife, for the former may protect herself in her legal rights by making due renunciation, whereas the latter, from her inability to act at all, is deprived of her legal rights. But there is but one law for the wife, sane or insane; and if the transaction is in one case in the nature of a purchase, grounded on consent, choice, election, acceptance, in other words, on contract, so, in the other, as there is no capacity there can be no contract, and she cannot be said to sell her legal rights. Of all persons whom the law guards with greatest care and tenderness and zeal, the unhappy lunatic may be considered the first. It is not mere Christian feeling, it is not the consequence of improved civilization, but it is found in our law from the earliest periods, as ancient as law itself, that a lunatic can do no prejudice to his person or estate; he can commit no crime, incur no forfeiture, make no contract. Limitations do not run against him. And even if our act had said *per directum* that a widow should forfeit her legal rights if she did not renounce, the law would have grafted an exception in favor of a lunatic widow, and would have held the act to be *lex sub graviori lege*. It would not have been presumed that the legislature intended to abrogate all the cherished and sacred principles of the law in relation to lunatics, much less in the actual provisions of the act, which clearly provides for an opportunity for election, which of course implies capacity to elect."

In the language of the court in the Washburn case, supra, we do not think it was the design of the statute in question to limit or abrogate the jurisdiction of a court of equity in a proper case. Such an inference should

not be made without a clear expression of such legislative intent.

It is insisted here, however, that the election was not made by the probate court, and that there was no showing, at the time of the election, that at that time the widow was incompetent to make it. All the proceedings were before the court. The widow had been in May, 1889, declared to be incompetent. In September of the same year her husband's will had been admitted to probate, and in November, 1889, the election was filed. The petition for the appointment of a guardian filed by her. husband set forth that she was mentally incompetent on account of her extreme old age, being nearly 84 years of age; that she was physically diseased, having been paralyzed, seriously affecting her in mind and body, so that she was incapable of caring for herself. Upon this petition she had been declared incompetent less than six months prior to the filing of the election. There is no pretense that she improved either physically or mentally. The court recognized her incompetency at the time of the filing of her election. It therefore appears that there was sufficient before the court at that time to satisfy the probate judge of her incapacity to act for herself.

The guardian applied to the probate judge as to what he should do regarding the. matter of said election, and the order shows that—

"He then made known to the court the value of the estate of said Stephen Andrews, the age of said widow, and the value of her estate; and that the terms of said will * * * were then considered and discussed by the court and said guardian."

The court thereupon advised the guardian that—

"He should, as guardian, do as he would were he such widow, and possessed of mental capacity to act in the

premises; that, receiving such advice, said guardian declared in open court that he would elect for his said ward to take under the statute, and such election was then drawn by the register of this court, and signed by said guardian, and filed; that such election by said guardian, and the drafting thereof by the register, were made with the knowledge and consent of this court."

We think the election a valid one. Here was more than a simple filing of a paper by the guardian of his determination. In effect, the guardian applied to the court for leave to elect to take under the statute, setting forth the age and condition of his ward, the amount of her property, the provision made by her husband for her, and the value of her husband's estate, and made and filed the election as the result of that conference with the probate judge as to what would be in and for her interest, and the probate judge approved the election. It is as if he had filed a petition setting forth the facts, declaring what, in his opinion, would be in and for the interest of the widow, making an election, and asking the approval of the court, and the court had entered an order approving such election. The statute requires the election to be evidenced by a writing filed in the court. In the present case the writing was filed by the guardian, and an order is entered showing that it was done with the leave, approval, and consent of the court, after full consideration of the facts.

The decree made and entered by the circuit court is affirmed, with costs to the appellee, and it will be certified to the probate court accordingly.

The other Justices concurred.