**DELEVAN v. THOM et al.**

**No. 4755.**

Court of Civil Appeals of Texas. Beaumont.

Dec. 14, 1951.

Baker, Vaughan & Black, Port Arthur, for appellant.

Rutan & Phares, Port Arthur, for appellees.

WALKER, Justice.

This suit involves the construction of the will of George H. Delevan, and a determination as to whether Mr. Delevan's wid-

ow, namely, Cathryn L. Delevan, shall accept or renounce the will.

The parties seem to be in agreement as to the facts of the case. From the stipulation filed as a statement of facts and from admissions in the parties' pleadings and briefs, we conclude that the facts may be stated as follows:

George H. Delevan and Cathryn L. Delevan were husband and wife. George H. Delevan died on March 10, 1950, leaving a will which was dated October 11, 1949, five months prior to his death. This will has been probated, and the appellees Thom and Williams have been appointed, and have qualified as, independent executors of this will, without bond; and when this cause was tried were administering the entire community estate of Mr. and Mrs. Delevan under this will, which they had construed, or had tentatively construed, as disposing of the entire community estate.

This will provided in part, as follows:

### "2.

"I desire that all my just debts shall be paid by my executors hereinafter named.

### "3.

"W. A. Williams and R. C. Thom of Port Arthur, Texas, are hereby appointed independent executors of my will, and I direct that no bond be required of them, that they shall act jointly, and no other action shall be had in the County Court in relation to the settlement of my estate than the probating and recording of this will, and the return of statutory inventory, appraisement and list of claims of my estate and all other claims due or owing to me at the time of my death as is required by law.

### "4.

"All of my property of every kind and nature, both real, personal and mixed, community and estate, wheresoever located or situated, shall pass to and become the property of W. A. Williams and R. C. Thom of Port Arthur, Texas, In Trust, However, for the following purposes, upon the following conditions, and for the time as is more fully set forth as follows, to-wit:

"(A) Said trustees are authorized and directed to take into their possession all of my property, both real and personal, and manage the same as in their judgment may be best for my estate and they shall have the right and power to sell any property of my estate at any time for any price consistent with good business as in their judgment will be to the benefit of the estate, provided that my said trustees shall at all times provide for the maintenance and support of my beloved wife, Cathryn L. Delevan, of Port Arthur, Jefferson County, Texas, throughout the remainder of her life in a manner befitting her social position in life and the standard of living to which she has been accustomed, and further provided that the home presently occupied by my wife shall not under any circumstances be sold unless absolutely necessary to support and care for my said wife, and further providing that all sums received from any insurance policies on my life shall first be applied by my executors to care, and support and maintenance of my said wife, and my said trustees are hereby authorized to use the principal of my estate or any part thereof to sufficiently maintain and support my said wife.

"(B) After the death of my said wife, above named, my said executors are authorized and directed to pay all of her debts including the expense of her last illness and buriel, and shall then proceed to close this trust and conclude the administration of my estate and shall convert all of my property of every kind and nature, both real and personal, into cash and after the payments of the debts of my estate and of my said wife, said cash shall be divided in the following manner:" Succeeding provisons bequeathed these funds to various legatees.

Cathryn L. Delevan, the widow of George H. Delevan, was of unsound mind when her husband died, and at that time was confined to her bed, incapable of speech or of voluntary movement; and this condition had existed for some time prior to the death of her husband. The record does not show how long Mrs. Delevan had been in this condition; but it seems reasonable to assume, and from the various admissions

of the parties we are authorized to assume, that Mrs. Delevan was in this condition when her husband made his will, which, as has been stated, was only five months prior to his death.

Since Mr. Delevan's death, the appellant Weathers has been appointed, and has qualified as the guardian of the person and estate of the said Cathryn L. Delevan, and in that capacity he brought this suit in behalf of his ward against the aforesaid executors as defendants.

It was alleged in the petition, and in effect it has been agreed between the parties, that George H. Delevan had procured a policy of insurance on his life in the sum of $10,000, which was payable to his estate; that the proceeds of this policy had been paid to the executors; and that the premiums charged for this policy had been paid by Mr. Delevan from the community estate of himself and 'Cathryn L. Delevan.

The petition also alleged the existence of other community property (which was not described but which has been identified at least in part by the inventory contained in the answer of the executors); and that the guardian had demanded of the executors one-half of the community estate of George H. Delevan and Cathryn L. Delevan, including the proceeds of the life insurance policy, as Cathryn L. Delevan's part of the community estate; and that the executors had refused to comply with this demand on the ground that the will was ambiguous and that they were not certain whether the will authorized them to comply with the guardian's demand.

The petition alleged further that the husband had intended for his widow to have her one-half of the community estate, and the prayer was for a construction of the will and that judgment be rendered in behalf of the widow for her part of the community estate.

In the first paragraph of their answer to this petition the executors listed the various items of property which had come into their possession. All of it was described as community property. We construe the last two sentences of the preliminary statement in appellant's brief as admitting that this inventory was correct.

The various properties listed by the executors may be described as follows:

(1) Lot 7, Block 175, City of Port Arthur, valued at $7,500;

(2) Household and kitchen furniture valued at $500;

(3) Bonds of the United States Government totaling $2,000, two of these, amounting to $1,500, being payable to George H. Delevan and the remainder being payable to him or to Mrs. Delevan;

(4) A bank account totaling $2,075 in the name of George H. Delevan;

(5) $130 listed as "from rent";

(6) $10,000 listed as "from insurance"

The total estimated value of these community properties was $22,205.

Payments by the executors totaling $2,-539.46 were also listed. By far the greater part of these payments had been made for the care and maintenance of Mrs. Delevan.

The executors alleged further that the will "requires an election on the part of the surviving wife" (presumably on the theory that the will disposed of the entire community estate); that the widow was incapable of making an election; and that the executors had been providing for the support and maintenance of the widow out of "the funds they now hold as such officers" but that they were uncertain whether they should comply with the guardian's demand or should retain and administer the entire community estate under the will. They joined in the guardian's prayer for a construction of the will.

The cause was tried to the court without a jury, and the trial court rendered judgment construing the will as placing "an election on Cathryn L. Delevan to take under the terms of his will and leave her property in the trust set out in said will or to not take under the will and take her community property out of said trust." In the judgment the trial court found that Mrs. Delevan was incapable of making the election and "the court must make said election for her"; and that "it will be more beneficial to Cathryn L. Delevan and to

the preservation of her estate that her property remain in the trust" created by the will, and rendered judgment electing, in behalf of Mrs. Delevan, that her property remain in the trust and that the trust be performed as directed in the will.

From this judgment the guardian has appealed, assigning three points of error for reversal.

Point One reads: "The trial court committed error in failing to adjudge that one-half of the proceeds of the $10,000 insurance policy was the property of and belonged to Cathryn L. Delevan." The judgment of the trial court did not determine what property Cathryn L. Delevan owned. It only construed the will and declared, in behalf of Cathryn L. Delevan, the exercise of an election to accept the benefits granted by the will to Cathryn L. Delevan in lieu of Mrs. Delevan's interest in the community estate. Whether Mrs. Delevan owned a part of the proceeds of the insurance policy is not material to the questions, whether the trial court correctly construed the will and whether the trial court had power to exercise an election in behalf of Mrs. Delevan.

Point Two assigns error to the trial court's construction of the will. The guardian says that the will did not dispose of the widow's part of the community estate because the property disposed of by the will is referred to in the will by the testator as "my property". Point Three reiterates this contention in another form and in the argument under this point the guardian lists decisions holding that the husband cannot dispose of the wife's part of the community estate by his will and cannot deprive the wife of her homestead rights.

Points Two and Three are overruled. ■ Of the arguments mentioned, the only one material to this appeal is that concerning the construction of the will. No question of election under George H. Delevan's will would have arisen if he had not attempted to dispose of property he did not own. The husband can give his widow the right to elect whether she will take her strict homestead rights or something else

in lieu thereof. McCormick v. McNeel, 53 Tex. 15; Lindsley v. Lindsley, 139 Tex. 512, 163 S.W.2d 633.

■ A testator's description of the property devised as being "my property" usually shows that he intended to dispose of only his part of the community estate; but the circumstances may show that this description, and equivalent terms, were actually intended to designate the entire community estate. See: Farmer v. Zinn, Tex. Com.App., 276 S.W. 191; Baldwin v. Baldwin, 134 Tex. 428, 135 S.W.2d 92. We construe George H. Delevan's will as disposing of the entire community estate of himself and Cathryn L. Delevan and of the homestead of the two, and as creating a trust in all of this property for the benefit of Cathryn L. Delevan. Of the circumstances, the most cogent is the widow's inability to care for herself and her property. The creation of a trust provided for the widow's support, enabled the husband to select the persons to be charged with the widow's support and to determine their powers, and kept the estate intact, devoted as a unit to one purpose. The inventory in defendant's answer becomes significant here for the estate evidently was not a large one. We note, too, that the persons named in the will as executors and trustees were "long time friends of Mr. and Mrs. Delevan and were well acquainted with them during their life and the circumstances involved." The will itself contains a number of expressions indicating the testator's intent. Thus in paragraph 4–(B) the trustees are directed to pay the wife's debts after her death and to pay the expense of her last illness and burial. This provision obviated the necessity of an administration on the widow's estate after her death and it was unnecessary and of no benefit to the widow during her lifetime unless the widow's community interest was a part of the trust fund. Further, the provisions in paragraph 4–(A) show that the trustees were charged with the entire cost of the widow's support. Thus, the trustees are directed to "at all times provide for the maintenance and support of my beloved wife—throughout the remainder of her life in a manner befitting her social

position in life and the standard of living to which she has become accustomed." This is not a provision for one-half of the widow's support or for a contribution to her support, and there was no reason for the husband to relieve his wife's property of the entire burden of her support since provision for her support was about the only way in which he could confer a personal benefit upon her. Further, the will referred specifically to the *entire* homestead and to *all* of the proceeds of the policy. The trustees were specifically authorized to sell the homestead in a certain situation, and it was provided that "*all* sums received from *any* insurance policies" on the testator's life should "first" be applied to the widow's support. The widow's rights in the homestead and in the insurance policy collected by the defendants were surely disposed of by these provisions; but these provisions also indicate the testator's general intent because the testator's disposition of "my property" evidently included these two items, which shows that he regarded "my property" as being the entire community estate, for the reference to the homestead and the insurance policies was not made by way of exception. Further, we construe the particular will as directing the trustees to take the same property in trust which they were to take as executors, and it would seem that as executors they were to take and to administer the entire community estate in the payment of community debts. See: Carlton v. Goebler, 94 Tex. 93, 58 S.W. 829; Lovejoy v. Cockrell, Tex.Com.App., 63 S.W.2d 1009.

Unquestionably, the husband's will granted the widow material benefits in lieu of her strict homestead rights and her interest in the community estate; and an election to take under the will was for her benefit, since this course doubled the income from that estate which was available for the widow's support.

These comments adjudicate the Points of Error assigned; but the trial court's exercise of an election in behalf of the widow to take under the husband's will in lieu of the widow's part of the community estate suggests a question of jurisdiction which we have thought it necessary to determine. The existence or not of a right of election depended upon and required a construction of the will, and the District Court had jurisdiction to determine this question; but this conclusion does not necessarily dispose of the succeeding questions, whether the right to elect should be exercised by the guardian, or by the Probate Court (on certification to that court of the judgment construing the will), or by the trial court which has assumed to exercise this right, namely, the District Court of Jefferson County.

The English Chancery Court assumed to have and freely to use the power to exercise rights of election in behalf of insane persons and other wards of that court, and the courts of many of the states have regarded this power as an item of their inheritance from the English Court. In tracing jurisdiction of the power under the constitution and statutes of the particular states it has sometimes been held that the power belonged to a court of equity and sometimes that it belonged to the court having probate jurisdiction, unless that court was unable to grant full relief, and in such a case the court having general equity jurisdiction was declared to have the power. See: Van Steenwyck v. Washburn, 59 Wis. 483, 17 N.W. 289, 48 Am.Rep. 532; Kennedy v. Johnston, 65 Penn. 451, 3 Am. Rep. 650; Wright v. West, 70 Tenn. 78; In re Hills' Will, 264 N.Y. 349, 191 N.E. 12, 93 A.L.R. 1380; In re Brown, 212 App.Div. 677, 209 N.Y.S. 288, affirmed 240 N.Y. 646, 148 N.E. 742; In re Estate of Andrews, 92 Mich. 449, 52 N.W. 743, 17 L.R.A. 296; Andrews v. Hall, 15 Ala. 85. And see the decisions Ambrose v. Rugg, 123 Ohio 433, 175 N.E. 691, 74 A.L.R. 449 and Mead v. Phillips, 77 U.S.App.D.C. 365, 135 F.2d 819, 147 A.L.R. 322, and the succeeding annotations at 74 A.L.R. 452 and 147 A.L.R. 336. And see 32 C.J. 749, Sec. 544, 44 C.J.S., Insane Persons, § 100, page 268; 69 C.J. 1109, Sec. 2373, to 2375, inclusive; 57 Am.Jur. 1078, Secs. 1527 et seq.; Pomeroy's Equity Jurisprudence, 5th. Ed., Vol. 2, p. 327, Sec. 461 et seq.; Page on Wills, Lifetime Ed., Sec. 1363, Vol. 4, p. 36.

We have examined the guardianship statutes, and it is our conclusion

that the right of election granted to Cathryn L. Delevan by her husband's will did not constitute such a property right as formed a part of the estate committed to the care of the guardian of her estate, or such a right as belonged to the guardian of her person. We hold, as a consequence, that the guardian could not exercise the right of election. These conclusions are in accord with authorities cited above.

■ Whether the power to exercise a right of election under a will in any case was among the powers granted to the County Court by the very general language of Sec. 16 of Art. 5 of the Constitution, Vernon's Ann.St., conferring probate jurisdiction upon that court is a different matter and one which we need not decide. We are satisfied that power to exercise this right of election in behalf of Cathryn L. Delevan exists and is vested in either the Probate Court or is a part of the jurisdiction in equity granted the District Court by Section 8 of Article 5 of the Constitution. Such a power is necessary for the proper care of the ward. As between the Probate Court and the District Court in this particular case, it is to be borne in mind that the defendants are trustees of an estate for the support and maintenance of the widow, and if the election be exercised as it was exercised by the trial court, the administration of this trust would be subject to the control of the District Court and would not be subject to the control of the Probate Court. On the other hand, if the election be exercised so as to renounce the will, then the Probate Court, acting in the guardianship, would have jurisdiction and control over the widow's part of the community estate and the trust, presumably, would lapse. The exercise of the power to make an election in this case thus determines what court shall administer the property, and since the District Court has been granted the broader jurisdiction by Section 8 of Article 5 of the Constitution, it seems proper that the choice should be made and the election be exercised in the District Court instead of the Probate Court. It must also be said that if the Probate Court were to act in this case, the action would be ex parte, for the trustees are not parties to the guardianship and no procedure exists for making them parties to the determination of such an issue as the exercise of the present right of election. Yet the trustees would be vitally affected by the court's order, and surely they, having been specially appointed by the testator to care for his wife, have as much right to be heard concerning the election as does the guardian. An issue, in effect, exists here between the guardian and the trustees which ought not to be determined ex parte, and this issue would necessarily go over into the District Court's auxiliary jurisdiction since the Probate Court, not having jurisdiction of the trustees, could not grant full relief. See: Lauraine v. Ashe, 109 Tex. 69, page 75, 191 S.W. 563, 196 S.W. 501; Griggs v. Brewster, 122 Tex. 588, 62 S.W.2d 980. Other reasons might be advanced in support of the jurisdiction of the trial court but we think these are sufficient grounds on which to determine the question, and it is our conclusion that the trial court, that is, the District Court of Jefferson County, had jurisdiction to exercise in behalf of Cathryn L. Delevan the right of election conferred upon her by her husband's will.

We have found no statute regulating this matter and have seen only two decisions by Texas courts which involved a court's exercise of a right of election conferred by a will. In Kerens National Bank v. Stockton, 281 S.W. 580, the Court of Civil Appeals assumed that the District Court had power to exercise, in behalf of certain minor children of the testator, a right to take under the will in lieu of certain property in which they were co-tenants with their father. The Supreme Court, at 120 Tex. 546, 40 S.W.2d 7, 77 A.L.R. 362, expressed general agreement with the opinion of the Court of Civil Appeals except in regard to some matters not relevant here, but did not refer to the point now under consideration. In Colden v. Alexander, 141 Tex. 134, at page 151, 171 S.W.2d 328, the Supreme Court approved a judgment of the District Court which, in effect, made an election in behalf of the widow in order to prevent delay in closing an administration of the husband's estate and distributing

the property to the husband's devisees. Two judgments were rendered by the District Court, one on appeal from an order of the Probate Court approving the final account of the executors and disposing of some other matters, and one rendered on the merits of an independent suit filed in the District Court. We construe these decisions as affording some support for our conclusions.

The judgment of the trial court is affirmed.