## HUNTINGTON COLLEGE v. MOORE et al.

### No. 2609.

District Court, W. D. Michigan, S. D.
Aug. 15, 1933.

Fred P. Geib, of Grand Rapids, Mich., for plaintiff.

Kim Sigler, of Hastings, Mich., for defendants.

TUTTLE, District Judge.

Plaintiff, as a residuary legatee under the last will of Thomas E. Cheesebrough, deceased, filed its bill of complaint in this court for the purpose of having declared null and void a certain so-called "election" filed in the probate court of Barry county, at Hastings, Mich., whereby it was made to appear that Hattie E. Cheesebrough, the mentally incompetent widow of Thomas E. Cheesebrough, deceased, by her guardian, Ward Moore, elected to take her portion of the estate of her husband, Thomas E. Cheesebrough, under the statutes of the state of Michigan instead of taking the provisions made for her in the will. of her deceased husband. Defendants answered, making many admissions and also denying many allegations of the bill. Proofs have been taken in open court.

Plaintiff is an Indiana educational corporation, operating a college for the instruction of young men and young women at Huntington, Ind., under the auspices of the United Brethren denomination (old constitution).

The defendants Ward, Clyde, and Leda Moore are residents and citizens of Michigan and are the sole legatees under an instrument alleged to be the last will and testament of Hattie E. Cheesebrough, now deceased, and are the real parties in interest. Defendant Charles F. Parker, merely a nominal defendant, is the special administrator of the estate of Hattie E. Cheesebrough, deceased, by appointment of the probate court of Barry county, Mich.

Thomas E. Cheesebrough died testate at Freeport, Barry county, Mich., on September 17, 1929. His last will and testament was duly probated in the probate court of Barry county, Mich., and disposed of an estate consisting of real and personal property appraised at the time of his death of upwards of $40,000. His widow, Hattie E. Cheesebrough, died August 11, 1932. Her alleged will was offered for probate by defendant Ward Moore in the probate court of Kent county. The brother and sole heir of deceased, one Frank Whittenberg, appeared in said probate court of Kent county and objected to the jurisdiction on the ground that his sister was a legal resident of Barry county at her death. His objection was sustained, and the alleged will has now been presented to the probate court of Barry county, where objection to its allowance has been filed by said brother.

The Grand Rapids Trust Company of Grand Rapids, Mich., was named as executor of the will and as trustee of the residue of the estate of Thomas E. Cheesebrough, duly qualified, and is at present still acting as executor, the administration of said estate being still pending owing, principally, to the controversy involved in this litigaton.

The will of Thomas E. Cheesebrough, so far as material to this controversy, provided:

"Sixth. I give, devise and bequeath the rest, residue and remainder of my Estate, wherever situated, to the said Grand Rapids

Trust Company, in trust, however, with powers and authority the same as set forth in division (a) of the fifth paragraph of my Will and as to said Perpetual Fund, I direct my Trustee as follows:

"(a) If my wife Hattie E. Cheesebrough, survives me, I direct my Trustee to pay to her, in quarterly installments, all the net income arising from this Fund, as long as she shall live; and in the event of serious injury or sickness to her, or other reasons, her income and support is not sufficient for her reasonable care, in my Trustee's judgment, I authorize and direct my Trustee to pay to her from the principal of this Fund, such amounts as it deems necessary to enable her to have such care.

"(b) Upon the death of my wife, if she survives me, or in the event she does not survive me, in either event, I direct my trustee to pay the net income arising from this Trust Fund, forever, in semi-annual installments, to the said Lane Memorial Home, and the said Huntington College, share and share alike, or to the survivor of them.

"Seventh. I hereby nominate and appoint the Grand Rapids Trust Company, the Executor of this, my Last Will and Testament, giving and granting unto it as such Executor, full power and authority to sell and convey and in any lawful manner dispose of my estate, real, personal and mixed, or any part thereof, upon such terms, at such times and in such manner as it shall deem proper and for the best interest of my Estate."

On October, 12, 1929, less than 30 days after the death of said Thomas E. Cheesebrough, his widow, Hattie E. Cheesebrough (in the presence of defendant Ward Moore, who for many years theretofore had been trustee of her property), executed the instrument now claimed to be her last will and testament, wherein and whereby she bequeathed all of her estate to the defendants herein, Ward Moore, Leda Moore, and Clyde Moore.

On May 27, 1930, Hattie E. Cheesebrough was adjudged to be mentally incompetent by the probate court of Kent county and defendant Ward Moore was appointed her guardian, in a proceeding instituted in that court upon petition of defendant Leda Moore. That petition alleged Mrs. Cheesebrough to be a resident of Kent county and to be mentally incompetent, and prayed that Ward Moore be appointed her guardian. The petition was not contested. The brother had no actual notice of the proceedings. No

appeal was taken, and the order has never been set aside.

On September 12, 1930, defendant Ward Moore filed in the probate court of Barry county, at Hastings, Mich., the following paper, the legal effect of which is the question for determination in this suit.

"State of Michigan
"County of Barry
"To the Probate Court for the County of Barry
"In the Matter of the Estate of Thomas E. Cheesebrough, Deceased.
"Election
"Hattie Cheesebrough, widow of said Thomas E. Cheesebrough, hereby elects to take under the provisions of the statute in the above estate.
"Dated this 12th day of September, 1930.
"Hattie E. Cheesebrough
"Ward Moore, Guardian."

This "election" was filed without the knowledge, consent, or approval of the probate judge, the judge being absent from the city on that date, and no action has been taken approving or disapproving the alleged election by the probate court of Barry county at any time since said paper was filed.

A brief review of the life of Hattie E. Cheesebrough is necessary to a complete understanding of the situation. She was born upon a farm near St. Johns, Clinton county, Mich., about the year 1873. When a small child her mother died, leaving Hattie, a brother Frank, and a husband, Frederick Whittenberg, surviving. William Moore and Eliza Moore, his wife, lived in the same community, and in due time adopted Hattie as their child in proceedings had in the probate court of Clinton county, Mich. These proceedings were completed by order of the probate court of that county on June 27, 1879.

At that time defendant Ward Moore was a young child two or three years of age, and at a later time two other children were born unto the Moore family, defendants Clyde Moore and Leda Moore. Shortly after the adoption of Hattie, the Moores moved to the village of Freeport, Barry county, Mich., and made their home there for many years. There Hattie was brought up in the Moore household, and there she attended the village school with her foster brothers and sister.

When Hattie was about twenty-three years of age, her natural father, Frederick Whittenberg, asked her to return to the Clin-

ton county farm and keep house for himself and the brother Frank. This Hattie did, but at the time she left the Moore home she relinquished her rights to inherit as an heir of William Moore for the sum of $25, and record of such relinquishment was formally made in the probate court of Clinton county under date of September 2, 1897. Thereafter, for about 17 years, Hattie continued to be housekeeper for her father and brother on the Clinton county farm. During that same time the Moore children, defendants in this suit, secured a higher education; defendant Ward being a graduate of the University of Michigan and defendants Clyde and Leda being graduates of the Michigan State Agricultural College of Lansing, Mich.

About the year 1914, Frederick Whittenberg, father of Hattie, died. His estate was settled, the brother Frank being administrator, and as a result of such settlement approximately $2,500 was inherited by each of the children, Hattie and Frank. The two children then went to Lansing, Mich., where Hattie kept house for Frank for a short time and until Frank married. Then Hattie went back to Freeport, Mich., and secured work and lived for a part of the time with her former foster parents, William Moore and Eliza Moore.

Prior to the time of Hattie's return to the Moores, they had learned of her inheritance from her own father, and immediately interested themselves for the avowed purpose of protecting her rights; and shortly after her return to Freeport secured from her a written instrument under date of November 17, 1915, in which instrument said Hattie was named as party of the first part and Dr. Ward Moore, one of the defendants herein, was named as a party of the second part. This instrument, after reciting that Hattie had become possessed of certain personal property, consisting of cash on hand in bank and a certain mortgage on real estate in Clinton county, and that she desired, because of her own lack of business judgment and experience, to turn over said cash and mortgage to Ward Moore, and that he was willing she should do so, provided, among other things, that all of said property should be turned over to him, that the mortgage should be assigned to him, all in trust for first party, for certain uses and purposes specified. Among other things, it was provided in the body of the instrument that:

"Second party also agrees that upon the request of first party, he will advance to her such sums of money as he may, in his judgment, deem to be reasonable in amount, the question of the reasonableness of the amount being a question left entirely in the discretion of second party hereto."

The instrument further gave second party complete power to invest and reinvest the money and property as he might desire without referring the matter to first party and as though the property belonged to him personally,

"It being the desire of first party that so far as third parties are concerned, second party shall be held out to be, and to all intents and purposes be the owner of the title in and to all of said personal property herein described, and the owner of all of the title in and to such property, either real or personal, as such personal property mentioned herein may be later re-invested in."

Second party agreed to use his best endeavors and judgment in the execution of the trust, and the instrument authorized him to retain out of such moneys or property his reasonable charges and compensation for loss of time while engaged on first party's affairs. The instrument further provided:

"It is mutually agreed by and between the parties hereto that this agreement shall be irrevocable, and that first party shall make no contracts, agreements, notes or any undertaking of any kind, with any person or persons, in regard to, or in any manner affecting the funds in the hands of second party during the continuance of this agreement, but that she shall at all times refer any person or persons desiring to borrow money of her, or any person attempting to interest her in any business project, to the party of the second part, and she agrees hereby, and intends hereby to be governed entirely and exclusively by second party's judgment in and about all of her financial affairs.

"Second party agrees that immediately upon the death of first party, he will account to the executor of first party's estate, fully, completely and in every manner as he would account to first party were she still alive."

The instrument was signed by Hattie Whittenberg and Ward Moore and duly acknowledged on the date of the instrument before a notary public. Otherwise the instrument is not witnessed.

The foregoing instrument continued in force throughout the life of Hattie E. Cheesebrough. During her life she received no funds, either principal or interest, from the trustee, Ward Moore.

In 1919 Hattie E. Whittenberg became the second wife of Thomas E. Cheesebrough

of Freeport, Mich. Mr. Cheesebrough's first wife had died 2 or 3 years earlier. Mr. Cheesebrough was a prosperous and highly respected citizen of Freeport. He owned a mill in the village which manufactured rake handles and other similar wood products. He owned a substantial farm near the village, and was a lifelong and devout member of the United Brethren Church of that place. His marriage with Hattie Whittenberg was satisfactory, and she was in full sympathy with his attitude toward his church, she herself became a member of that church, and was active in her support of, and attendance upon, its various services. Both Mr. and Mrs. Cheesebrough were substantial contributors in their lifetime to Huntington College, and Mr. Cheesebrough was a member of the board of trustees of the Lane Dulcenia Memorial Home, an institution located at Charlotte, Mich., for the care of aged women. These institutions are the residuary legatees in Mr. Cheesebrough's will.

On December 4, 1923, Thomas E. Cheesebrough made his last will and testament. His wife knew about the will, and was in accord with its provisions. The material portions of the will appear above.

The said will was duly probated in the probate court of Barry county at Hastings, Mich., and the Grand Rapids Trust Company of Grand Rapids, Mich., was appointed executor of the will, duly qualified, and assumed its duties as executor under the will. In connection with those duties, it sent its representatives to Freeport, Barry county, Mich., and took into its possession the personal property of the deceased, including therein various securities which stood in the joint names of the deceased and his wife, Hattie. Among other property held jointly was $4,000 in certificates of deposit on the Old Kent Bank of Grand Rapids, Mich., and a quantity of Automatic Music Company stock.

Upon learning that the executor of Mr. Cheesebrough's will held this joint property, Ward Moore presented himself at the office of the company with the trust agreement above referred to, and asked that the property belonging to Hattie Cheesebrough be turned over to him. This request was refused unless accompanied by a receipt or other paper signed by Hattie Cheesebrough, subsequent to the death of her husband, authorizing the delivery to Ward Moore. Later a receipt was presented to the said trust company by Ward Moore, signed by Hattie E. Cheesebrough, authorizing him to take the property, and on October 12, 1929, said Ward Moore entered into a so-called supplemental agreement with Hattie Cheesebrough wherein reference was made to the agreement of November 17, 1915, reciting that she had recently and would in the future become possessed of other properties which she desired to have included in the agreement above referred to.

Then followed an agreement:

"To turn over to second party in addition to the items mentioned in said agreement, any and all property of every kind and nature, real and personal, that may come to or belong to her, and particularly such properties as may come to her either by the will of her late husband or under the laws of descent and distribution, IN TRUST, for first party, for the uses and purposes as set forth in detail in the original agreement above referred to."

This so-called supplemental agreement was signed by Hattie Cheesebrough and Ward Moore in the presence of Frances Lewis and Fred Roth, and was duly acknowledged before Fred Roth, a notary public.

On the same date, and at the same place and witnessed by the same witnesses, Hattie Cheesebrough made the instrument now claimed to be her last will and testament. This instrument purported to give all of her property to Ward Moore, Leda Moore, and Clyde Moore, and nominated Ward Moore as the executor of the alleged will.

On December 4, 1929, the probate court for the county of Barry awarded Hattie Cheesebrough a widow's allowance of $100 a month from the estate of her husband. For the first few months, that allowance was paid by the Grand Rapids Trust Company direct to her; the remittances being sent by mail. Beginning with the April, 1930, remittance, all further remittances of this $100 a month were made to Ward Moore, he having secured an order from Hattie Cheesebrough covering the April, 1930, payment, and later payments were made to him by virtue of his appointment as guardian of the estate of Hattie E. Cheesebrough, mentally incompetent, by the probate court for the county of Kent.

The petition for the appointment of Ward Moore as guardian of Hattie Cheesebrough was filed in the probate court of the county of Kent at Grand Rapids, Mich., on April 28, 1930. The petition was signed and sworn to by defendant Leda Moore. It recited that Hattie Cheesebrough was a resident of Kent county, was possessed of real estate of the value of $500 and of personal

property to the extent of an income of $200 annually. The order of appointment found that Hattie Cheesebrough was a resident of Kent county, was mentally incompetent, and appointed Ward Moore her guardian, and required him to give a bond of $200.

A short time before the petition for appointment of guardian was filed, Leda Moore rented a furnished house at 701 Fuller Avenue S. E., in the city of Grand Rapids, Mich., and brought Hattie Cheesebrough there, where they lived until the close of the public schools in June following. The house in question was rented from a public school teacher who was going away for a few weeks to take a course of instruction at the Western State Teachers' College at Kalamazoo, and the house in question was rented for not to exceed 12 weeks, and to the time when school would close. Hattie Cheesebrough at no time moved her belongings from the homestead at Freeport, and the testimony shows that, while she was in Grand Rapids on this occasion, she left a house plant with a neighbor, the wife of her pastor, to care for until her return. At the close of the public schools, Mrs. Cheesebrough and Leda returned to Freeport and resumed their residence at that place. In the guardianship proceedings an order for personal service of notice of hearing upon Hattie Cheesebrough was made by the court, and the proof of service shows that such service was made upon her by defendant Ward Moore. In the petition for the appointment of guardian, Frank Whittenberg was named as brother of Hattie, but his residence was reported upon the petition to be unknown. Notice of hearing upon such petition was duly published, and proof of publication was duly filed. Throughout her life Hattie Cheesebrough continued to reside in Freeport, Barry county, Mich., in the family residence, save as she was absent temporarily therefrom.

On September 16, 1930, Ward Moore caused certified copies of his letters of guardianship issued by the probate court for the county of Kent to be filed in the Thomas Cheesebrough estate in the probate court for Barry county, Mich., and simultaneously placed on file in that court the alleged election set forth above.

No action has been taken by the probate court of Barry county either approving or disapproving the election, and it is undisputed that the so-called election was made without laying the facts relating thereto before the probate court of Barry county. No action was taken by the Grand Rapids Trust Company, executor of the Thomas E. Cheesebrough will, to set aside to Ward Moore, guardian, any property under said election, and the filing of the election has operated to hold up and delay the final closing of the Thomas Cheesebrough estate.

On October 18, 1930, Leda Moore stored a quantity of her household furniture in the Cheesebrough home at Freeport, where the same remained until after the death of Hattie Cheesebrough.

On January 7, 1931, the probate court of Barry county made an order, upon the petition of Ward Moore, guardian, continuing the widow's allowance theretofore made, at the rate of $100 a month until her portion of the Thomas Cheesebrough estate should be assigned to her.

On August 11, 1932, Hattie E. Cheesebrough died without having changed her residence.

On August 15, 1932, Ward Moore filed his petition in the probate court for the county of Kent, presenting the will of Hattie E. Cheesebrough for probate, and asking that he be appointed executor of the will.

On September 3, 1932, Frank Whittenberg, brother of Hattie, filed his petition in the probate court of Barry county praying for the appointment of a special administrator of his sister's estate and securing the appointment of defendant Charles F. Parker as special administrator.

Upon objections of the brother, the probate court for the county of Kent dismissed Ward Moore's petition for the probate of Hattie Cheesebrough's will in the Kent probate court. The will was then presented for probate at Hastings, Barry county, Mich., where proceedings relating to the will are now pending.

On June 13, 1930, defendant Ward Moore, as guardian of Hattie Cheesebrough, filed an inventory in the Kent county probate court showing a total of assets in his hands belonging to his ward of $10,595.49.

On July 16, 1931, Ward Moore filed his first annual account as guardian of Hattie Cheesebrough, showing balance then in his hands of $11,558.02.

On July 9, 1932, defendant Ward Moore filed his second annual account as guardian of Hattie Cheesebrough, showing a balance of $12,150.47.

On December 16, 1932, Ward Moore filed in the Kent county probate court his final account as guardian of Hattie Cheesebrough.

None of the foregoing accounts has been allowed or approved by the probate court for the county of Kent, and Frank Whittenberg, brother of Hattie Cheesebrough, has filed formal objections to the allowance of any and all of those accounts.

The undisputed evidence in the case shows that there are no adequate vouchers filed to support the disbursements reported to have been made in said accounts. There is undisputed evidence indicating that substantial amounts of the income from the property in the hands of Ward Moore, guardian, were used by the Moores themselves, and the proof is undisputed that Hattie Cheesebrough, from the time that Ward Moore became guardian, received from the guardian much less than the amount allowed to her by the probate court of Barry county, and that she received nothing from the income accruing upon her own personal property in the hands of said guardian.

Plaintiff's bill of complaint charges that the defendants Ward Moore, Leda Moore, and Clyde Moore fraudulently conspired together to procure for themselves the estate of Hattie E. Cheesebrough, and also as much as possible of the estate of her husband, Thomas E. Cheesebrough.

In addition to the foregoing facts, all of which are either admitted or undisputed, the following facts are found:

(1) That the said charge of fraudulent conspiracy in plaintiff's bill of complaint is, as a matter of fact, fully sustained by the proofs.

(2) That the alleged election filed by Ward Moore as guardian in the probate court of Barry county at Hastings, Mich., on the 16th day of September, 1929, was a part and parcel of such fraudulent conspiracy, and was made and filed, not for the use and benefit of Hattie Cheesebrough, but for the intended use, benefit, profit, and advantage of the defendants Ward Moore, Leda Moore, and Clyde Moore.

(3) That the legal residence of Hattie E. Cheesebrough at the time the guardianship proceedings were instituted against her in the probate court for the county of Kent at Grand Rapids, Mich., was not the county of Kent, but was in the village of Freeport, Barry county, Mich.

(4) That the administration of the estate of Hattie Cheesebrough, mentally incompetent, by her guardian, Ward Moore, was in truth and in fact primarily in the interest of defendants Ward, Clyde, and Leda Moore, and not primarily in the interest of Hattie E. Cheesebrough, the ward.

(5) That the claims of the defendants Moore to be brothers and sister of Hattie E. Cheesebrough were not asserted in good faith, but were a mere pretense, sham, and fraud, whereby a simple-minded and trusting woman was misled and deceived to her damage and to the benefit of her deceivers, the defendants Ward, Clyde, and Leda Moore.

(6) That Hattie E. Cheesebrough and her husband, Thomas E. Cheesebrough, were devout and faithful members of the United Brethren denomination, and in their respective lives made liberal contributions, not only to the local church of that denomination at Freeport, but also to various institutions maintained by that church, and, among others, the plaintiff, Huntington College.

(7) That the provisions in the will of Thomas E. Cheesebrough for the support of his widow after his death were more advantageous to the widow than the benefits that would accrue to her under an election such as was attempted by Ward Moore, her guardian.

(8) That Hattie Cheesebrough knew of the provisions of her husband's will before his death, was in full accord with those provisions, and that there is no evidence that she ever changed her mind about them.

(9) That the provisions made in the will of Thomas E. Cheesebrough for his widow were reasonable, liberal, and in case of necessity permitted the use of the entire estate for her benefit and support.

(10) That the election, if sustained, would have transferred from the Grand Rapids Trust Company, trustee, to Ward Moore, as guardian, on the basis of the inventories of the Grand Rapids Trust Company, approximately $16,000 of property.

(11) That such transfer would have inured to the benefit of the Moores, but would not have inured to the benefit of Hattie E. Cheesebrough.

(12) That the probate court of Barry county never approved, ratified, confirmed, or otherwise gave its assent to the attempted election placed in its files in the estate of Thomas E. Cheesebrough, deceased, by defendant Ward Moore, then acting as guardian.

The court makes the following conclusions of law:

(1) That the so-called election filed by defendant Ward Moore, as guardian, in the estate of Thomas E. Cheesebrough, deceased, in the probate court of Barry county, Mich., at Hastings on September 16, 1930, is null

and void and of no legal force or effect whatever.

(2) That Ward Moore, as guardian, was disqualified at the time he attempted to make such election by reason of having an interest in the matter adverse to that of his ward, Hattie E. Cheesebrough, and for that reason he could not make a valid election for her.

(3) That the law is that, in the case of a mentally incompetent widow, the probate court and not the guardian of the incompetent must elect for the widow. An attempted election by such a guardian without the knowledge, consent, and approval of the probate court where the election is attempted is a nullity. In re Estate of Andrews, 92 Mich. 449, 52 N. W. 743, 17 L. R. A. 296.

(4) That plaintiff, Huntington College, is entitled to a decree clearing the title to its legacy under the last will and testament of Thomas E. Cheesebrough, deceased, from any and all claims of defendants Ward, Clyde, and Leda Moore and of the estate of Hattie E. Cheesebrough, deceased, and of each and every of them.

(5) That plaintiff, Huntington College, is entitled to recover its costs to be taxed against the defendants Ward Moore, Leda Moore, and Clyde Moore.

Decree may be prepared accordingly.

This opinion will stand as the court's findings of fact and conclusions of law.